UNITED STATES of America,
Plaintiff–Appellee,

v.

Kerry Lynn BROWN,
Defendant–Appellant.

No. 86–5306.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided April 27, 1989.

Peter M. Horstman, Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

David A. Katz, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before SCHROEDER, REINHARDT and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Kerry Lynn Brown appeals his conviction for the first degree murder of a postal employee and for the use of a firearm during the commission of a federal felony, in violation of 18 U.S.C. §§ 1111 (1982 & Supp. III 1985) (amended November 1986), 1114 (Supp. IV 1986), and 924(c) (Supp. III 1985) (amended May 1986). At trial, the court excluded evidence tending to show that Brown suffered from a mental disease or defect. The court also allowed the Government to introduce evidence of two of Brown's prior wrongful acts. We have jurisdiction under 28 U.S.C. § 1291 (1982). We reverse and remand for a new trial.

## FACTS AND PROCEEDINGS

On April 2, 1986, appellant Brown sat in his car outside his parents' home at 1:30 a.m. A male arrived in a car, approached Brown, and shot him at close range. The bullet entered Brown's left jaw and exited through his right cheek. After a brief period at the hospital, Brown returned to his parents' home to recuperate. Brown's assailant was never captured.

Approximately three weeks later, on April 26, Brown shot and killed a postal carrier as she delivered mail to the home of Brown's parents. There is no evidence of any animosity between Brown and the carrier nor any evidence of a dispute. The evidence showed that Brown was left alone the day of the killing, that he found and test-fired a shotgun, and that he twice shot the postal carrier from behind a screen door. The police arrested Brown shortly after the shooting.

Brown was charged with first degree murder of a federal employee and with use of a firearm during the commission of a federal felony under 18 U.S.C. §§ 924(c), 1111, 1114. Brown elected not to pursue an insanity defense. The defense theory was rather that Brown lacked the specific intent required to commit first degree murder. A jury found Brown guilty as charged.

## DISCUSSION

### I. Evidence of Brown's Prior Bad Acts

In rebuttal and over objection by Brown's counsel, the Government introduced evidence of two of Brown's prior wrongful acts. A Ms. Dukes testified that, three months prior to the killing, someone shot into her home. The telephone then rang, and she recognized Brown's voice saying it was he who had shot into her home and that if the occupants "want[ed]

some shit to come on up." [1]  Another witness testified that in 1979 Brown confronted a Mr. Lee with a loaded rifle in his hands, his finger on the trigger, and demanded that Lee give him back his (Brown's) gun.

In this appeal, Brown contends that evidence of the two prior wrongful acts is inadmissible character evidence under Fed. R.Evid. 404(b).[2]  The government argues that the evidence was properly admitted under the Rule to rebut the defense claims of mistake, accident, and lack of motive.

Under Rule 404(b), evidence of a defendant's prior crimes or wrongful acts may not be introduced to show that the defendant has a bad character and is therefore more likely to have committed the crime with which he is charged. *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir.1985). The rule is designed to avoid "a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[04], at 404–29 (1988) (citations and footnote omitted).

Rule 404(b) provides, however, that evidence of the defendant's wrongful acts is admissible to show motive, intent, knowledge, identity, or absence of mistake or accident. In those cases, we have read the Rule to require (1) that evidence of the prior conduct tend to show an element of the charged offense that is a material issue in the case; (2) in some cases, that the prior conduct be similar to the offense charged; (3) clear and convincing proof that the defendant committed the prior acts; (4) that the probative value must not be substantially outweighed by the danger of unfair prejudice; and (5) that the prior act not be too remote in time. *United States v. Sarault*, 840 F.2d 1479, 1485 (9th Cir.1988). The Supreme Court recently modified the third of the above factors, in a case involving an admission of evidence relating to an act similar to the one charged, to require only that the evidence be sufficient "to support a finding by the jury that the defendant committed the similar act." *Huddleston v. U.S.*, 485 U.S. 681, ——, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

Our review of a trial judge's decision on admissibility pursuant to Rule 404(b) is for abuse of discretion. *United States v. Lewis*, 837 F.2d 415, 418–19 (9th Cir.1988).

We conclude that the trial court abused its discretion when it admitted the evidence of Brown's prior wrongful acts. We disagree with the Government that the evidence was probative to rebut the defenses of lack of motive, accident, and mistake, as explained below.

A. Lack of Motive

During trial, in cross-examination and in the defense case, the defense counsel suggested Brown had no motive to kill the postal carrier. The Government argues that the defense thus made motive a "key issue" in the case. According to the Government, this entitled it to introduce evidence of Brown's prior wrongful acts to show Brown's motive in performing this killing. The Government reads Brown's prior wrongful acts as showing that Brown derives a thrill from creating violence, and that the motive behind the killing was the desire to obtain this thrill.

■ Contrary to the Government's suggestion, evidence of other bad acts is not automatically admissible simply because the defendant argued at trial that he had no motive to commit the crime. Under Rule 404(b), evidence is admissible for purposes other than to show the character of the defendant only if it relates to an ele-

---

**1.** Although apparently Ms. Dukes was alone at her house at the time of the shooting, her testimony suggests Brown could have concluded she was not alone.

**2.** Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ment of the crime charged. *Sarault,* 840 F.2d 1479, 1485; *United States v. Bailleaux,* 685 F.2d 1105, 1109–10 (9th Cir. 1982). Motive, however, is not an element of the offense of first degree murder. *Cf. United States v. Franklin,* 704 F.2d 1183, 1188 (10th Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983) (racial motive element of crime under 18 U.S.C. § 245(b)).

■ Our cases reflect the principle that where motive is not an element of the offense, prior bad act evidence is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material issue. *See* 22 C. Wright and K. Graham, *Federal Practice and Procedure: Federal Rules of Evidence* § 5240, at 480 (1978) ("motive is not an ultimate issue; therefore, proof of motive must always be directed at some other fact that is an ultimate issue in the case[; e]vidence of motive may be offered to prove that the act was committed, or to prove the identity of the actor, or to prove the requisite mental state."). *See also United States v. Bowman,* 720 F.2d 1103, 1104–05 (9th Cir.1983) (defendant's prior conviction for assault of wife's relative held admissible to show motive of revenge in assault against his wife, where defendant claims self-defense); *United States v. Bradshaw,* 690 F.2d 704, 708–09 (9th Cir. 1982), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983) (defendant's prior sexual acts with minor held admissible to show motive behind kidnapping of minor, where the defense raises a theory of consent).

■ The only disputed material issue in this case was whether Brown had the specific intent required to commit first degree murder. The evidence of Brown's prior acts is therefore admissible to show motive only if relevant to show Brown's specific intent.

We conclude the prior bad act evidence fails to show any motive which would in turn be relevant to show the required intent. The prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in criminal activity. *See United States v. Feldman,* 788 F.2d 544, 556–57 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987) (evidence of substantial debt admitted to show motive for bank robbery); *Bowman,* 720 F.2d 1103, 1104–05 (evidence of prior conviction admitted to show motive of revenge); *Bradshaw,* 690 F.2d 704, 708–09 (evidence of prior sexual acts between victim and defendant admitted to show motive for kidnapping).

Here, however, the evidence established, at most, Brown's general propensity for violence. The bad act evidence concerns Brown's efforts to recover his property at gunpoint seven years prior to this offense, and a shooting into Ms. Dukes' home. No evidence whatsoever links the postal carrier to Brown's prior acts. There is no evidence in the record that Brown was acquainted with the carrier in a capacity other than as his parents' mail carrier. In sum, we do not see a single fact contained in Brown's prior acts from which Brown could have derived a motive to kill the carrier in this case. The prior acts clearly establish Brown's propensity for violence, but that is precisely the use of evidence barred by Rule 404(b).[3]

### B. Accident or Mistake

■ The Government argues that the bad act evidence should be admitted, if not to show motive, at least to rebut the defenses of accident or mistake. The record reveals that the defense raised the issue of accident or mistake in the context of a

---

**3.** In light of our holding that the evidence the government introduced at Brown's trial does not fall within any of the exceptions to Rule 404(b)'s general bar to the admission of prior bad acts evidence, we need not decide whether the evidence satisfied our other requirements for admissibility. We have, however, serious doubt that at least one of the two accounts could

have been admitted. Specifically, the seven year-old incident in which Brown allegedly recovered his property at gunpoint is substantially more remote in time than prior acts usually admitted under 404(b). *See, e.g., United States v. Bailleaux,* 685 F.2d at 1111 (ten days between prior act and alleged crime).

defense of "imperfect self-defense."[4] The defense argued that Brown concluded, albeit unreasonably, that the person who approached his parents' home was not a postal carrier, but the man who three weeks previously had shot Brown. Thus, the defense sought to deny that Brown possessed the intent to commit murder. *See United States v. Skinner*, 667 F.2d 1306, 1310 (9th Cir.1982), *cert. denied*, 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983) (although theory not yet applied in jurisdiction, " 'imperfect self-defense' theory could reduce an intentional killing ... from murder to voluntary manslaughter").

As with motive, evidence of Brown's prior bad acts to show lack of accident or mistake is inadmissible unless relevant to an element which is a material issue in the case. The material issue here is whether Brown had the required intent to commit first degree murder. We are unable to agree with the district court that evidence of Brown's prior bad acts is relevant to rebut the defense of accident or mistake as raised by the defense. Brown's efforts to recover his property at gunpoint and his shooting into Ms. Duke's home do not tend to show that it was unlikely that Brown could have mistaken the postal carrier for his recent assailant.

For the reasons stated above, we believe that the evidence of Brown's prior bad acts was not relevant to establish motive, or lack of accident or mistake, and cannot therefore be used to establish any element of the charged offense as to which there was a material issue in the case. If the evidence was relevant, its relevance was so marginal as to be more than substantially outweighed by prejudice against Brown. *See* Fed.R.Evid. 403; *see also Sarault*, 840 F.2d at 1485. The trial court abused its discretion in admitting the prior bad acts into evidence.

### C. Harmless Error Doctrine

■ Having concluded that is was error for the district court to admit evidence

pursuant to Rule 404(b), we reverse only if the error was not harmless. *See Hodges*, 770 F.2d at 1480 (citing *United States v. Soulard*, 730 F.2d 1292, 1296 (9th Cir. 1984)); *see also* Fed.R.Crim.P. 52(a). Errors, such as this one, which do not rise to constitutional dimension, are not harmless unless it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict. *Hodges*, 770 F.2d at 1480.

In its closing argument to the jury, the Government used a theory of motivation to explain the killing of the postal carrier:

> The question is not really so much why he [Brown] did it; however, I thought it would be appropriate to give you my theory, my theory of motivation on how it happened.
>
> .... [The postal carrier] died because the defendant had his personal agenda or objective to satisfy in killing her. He got some thrill on account of it. He got some sense of viciousness satisfied in him out of it....

This theory of motivation heavily relied on the evidence of Brown's prior bad acts. In its rebuttal to the defense's closing argument, the Government mentioned and discussed each of Brown's prior bad acts four times. In its final remarks, the Government stated:

> Ladies and gentlemen, I submit to you, the evidence has shown that something got to the Defendant that day. That his rage and viciousness spilled out and it consumed [the postal carrier's] life.
>
> I submit to you, that the Government has shown a motive in this case. We don't have a burden to do so. But the human mind, I think, naturally ... explores for a motivation in a situation like this. And I think we have shown it.
>
> Same as in '79 [the recovery of property at gunpoint]. Same as in January of '86 [the shooting into Ms. Dukes' home]. That he was vicious and that he lashed out and that he took this woman's

---

**4.** "Imperfect self defense" refers to the situation in which an individual "honestly but unreasonably believes that he is in danger of injury or that killing is the only way to prevent it." 2

LaFave and Scott, *Substantive Criminal Law*, § 7.11(a) at 271–72 (1986). Defendants who prevail on this defense are often convicted of some form of manslaughter. *Id.*

life. There was no accident and no mistake.

Despite the other evidence against Brown, the continued references to Brown's prior bad acts at the Government's closing arguments make it impossible for us to say it is more likely than not that they did not affect the jury's verdict. A reasonable juror unsure of Brown's specific intent to commit first degree murder might have elected to convict Brown of that offense based on the bad act evidence admitted and on the government's comments. We must therefore reverse the trial court's decision.

## II. Firearm Conviction

Brown was also convicted for using a firearm during the commission of a federal felony, in violation of 18 U.S.C. § 924(c).[5] Section 924(c) imposes an additional term of imprisonment to the sentence imposed for the commission of a federal felony. Since in order to apply section 924(c) it must first be determined that the defendant committed a separate federal felony, our decision to reverse Brown's first degree murder conviction necessitates that we reverse the firearm conviction as well.

## III. Evidence of Mental Disease or Defect

Given our decision to reverse and remand, we briefly comment on an issue which may be of importance at Brown's new trial. Prior to the trial appealed from, Brown decided not to raise an insanity defense. He also chose not to present expert testimony concerning his mental condition bearing on guilt under Fed.R.Crim.P. 12.-2(b). Instead, Brown offered lay testimony that he tried to commit suicide, that his mother unsuccessfully sought psychiatric care for him, that his mother thought that he was depressed, that he made statements to his relatives regarding his fears that the assailant was out to kill him, and that he had no recollection of the events after they occurred.

The trial court excluded the lay testimony offered by the defendant. The court thought that the evidence was offered to show that Brown suffered from a mental disease or defect, and that the Insanity Defense Reform Act of 1984 ("the Act"), 18 U.S.C. § 17,[6] made the evidence inadmissible. The Act provides in part:

(a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts. *Mental disease or defect does not otherwise constitute a defense.*

(Emphasis added).

We recently construed the scope of the Act. *United States v. Twine*, 853 F.2d 676 (9th Cir.1988). In *Twine* we considered the legislative history of the Act and the case law construing its impact on the admissibility of mental defect evidence in cases not involving the insanity defense. We noted the district court's opinion in *United States v. Frisbee*, 623 F.Supp. 1217, 1221 (N.D.Cal. 1985), which held that the Act did not bar evidence tending to absolve a defendant of criminal liability by negating an element of the offense. The court in *Frisbee* reasoned that the Act only barred testimony of mental defect evidence to *excuse* admittedly criminal behavior in conjunction with an affirmative defense. *Id.* We explicitly agreed with *Frisbee* and held that

Congress intended to restrict a defendant's ability to excuse guilt with mental defect evidence, curtailing the insanity defense. But Congress did not intend to

---

**5.** At the time of the killing of the postal carrier, i.e. April 26, 1986, section 924(c) provided in part:

Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for such crime of violence, be sentenced to imprisonment for five years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for ten years....

**6.** The Act was formerly codified under 18 U.S.C. § 20 but was renumbered in 1986. We refer to it under 18 U.S.C. § 17, its present codification.

eliminate a defendant's ability to disprove guilt with mental defect evidence. *Twine,* 853 F.2d at 679 (footnote omitted).

At Brown's new trial, any evidence of a mental defect offered to show that Brown lacked the specific intent to commit first degree murder should therefore not be excluded on the basis of 18 U.S.C. § 17. If the evidence is excluded, it must be excluded on other grounds.[7]

REVERSED AND REMANDED.

---

**7.** Given our decision to remand for a new trial, we decline to discuss Brown's arguments that the district court improperly restricted his right to cross-examine witnesses and that the sentence imposed was illegal.