958 F.2d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stacy Ann JULY, Defendant-Appellant.
 No. 90-10457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 14, 1992.
Decided March 25, 1992.
 
 Before TANG, PREGERSON and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Stacy Ann July appeals her conviction for second degree murder. We affirm.
 
 BACKGROUND
 
 3
 Stacey July was charged with the premeditated murder of her husband on December 22, 1988, a violation of 18 U.S.C. § 1111. July presented a battered spouse defense. The government presented about 32 witnesses in its case in chief, and five witnesses in rebuttal. The government's experts did not testify. The defense called its expert and three other witnesses. July testified and admitted stabbing her husband. The jury found her guilty of second degree murder and the judge sentenced her to 120 months in prison. Defendant raises four issues on appeal.
 
 DISCUSSION
 A. MENTAL EXAMINATION
 
 4
 Defendant hired a psychologist and expert on the spouse abuse or battered woman syndrome ("BWS"), Dr. Lenore Walker, who examined defendant and testified. The government successfully moved for a pre-trial examination of the defendant by its experts, Drs. Kappenberg and Ewing. July objects to the examination on several grounds.
 
 
 5
 1. Authority to Order the Exam.
 
 
 6
 July alleges that the court had no authority to order the examination. The government asked for a mental examination pursuant to Fed.R.Crim.P. 12.2(c). The court declined to rely on the rule, reasoning that the clear language of Fed.R.Crim.Pro. 12.2(c) permits an exam only pursuant to 18 U.S.C. § 4241 (referrring to mental incompetency to stand trial) and 18 U.S.C. § 4242 (referring to insanity defenses). This conclusion appears correct based both on the language of 12.2(c) and the corresponding advisory committee notes.
 
 
 7
 The court instead ordered the exam pursuant to its inherent powers, citing United States v. Malcolm, 475 F.2d 420 (9th Cir.1973). District courts have "wide latitude ... to carry out successfully [their] mandate to effectuate, as far as possible, the speedy and orderly administration of justice" to ensure fundamental fairness. United States v. Richter, 488 F.2d 170, 173 (9th Cir.1973). Under this broad standard, the court below properly used its authority to order the mental examination.
 
 
 8
 The court's authority is not unlimited: an examination cannot impermissibly infringe upon the defendant's constitutional guaranties or otherwise exceed the court's discretion. Malcolm, 475 F.2d at 424-425. July appears to argue that the court abused its discretion because she never put her mental state in issue, and therefore the government was not entitled to a mental examination.
 
 
 9
 July argues that she does not claim a mental disease or defect, but only needed an expert to assist the trier of fact in judging the reasonableness of her response to the actions of her husband, i.e., to demonstrate that she acted in self-defense at the time she stabbed him. However, her psychologist, Dr. Walker gave an opinion, based on psychological testing and a personal interview, that defendant had symptoms consistent with BWS. Although the trial court failed to recognize the distinctions between a mental state defense and battered woman syndrome evidence, its rationale for allowing the exam nevertheless applies. The trial court reasoned that the mental examination was the most trustworthy means for the government to verify the defendant's claims. Because the government has the burden of proof, it should have access to the same type and quality of evidence as the defense. Its experts were therefore entitled to examine July and conduct their own evaluation of her BWS claim. Thus, the fact that defendant did not present her BWS evidence as a mental state defense is not dispositive.
 
 
 10
 Further, the cases July cites to show the government was not entitled to a mental examination are not on point. For instance, United States v. Hill, 655 F.2d 512, 517-518 (3rd Cir.1981), and United States v. Webb, 625 F.2d 709, 710-711 (5th Cir.1980), discuss notice of a mental state defense under Fed.R.Crim.P. 12.2(b), not the broader issue of government entitlement to an examination.
 
 
 11
 In conclusion, the trial court properly exercised its inherent powers under Malcolm when it ordered the examination.
 
 
 12
 2. Constitutional Claims.
 
 
 13
 Defendant claims that the examination violated her Fifth and Sixth Amendment rights. Alleged constitutional errors require de novo review by the court of appeals. United States v. Yarbrough, 852 F.2d 1522, 1529 (9th Cir.), cert. denied, 488 U.S. 866 (1988).
 
 
 14
 The court restricted the use of the information to explanations of BWS or defendant's mental condition and arranged for taped interviews. July argues that these restrictions were insufficient, and that the government was able to use the results of the examination in its case in chief in violation of the Fifth Amendment.
 
 
 15
 To succeed, July must first show prejudice, because the harmless error analysis of Chapman v. California, 386 U.S. 18 (1967), applies in a noncapital case to constitutional errors in the use of a psychological evaluation at trial. Satterwhite v. Texas, 486 U.S. 249, 257-58 (1988), citing Buchanan v. Kentucky, 483 U.S. 402, 425 n. 21 (1987).
 
 
 16
 July never goes beyond her broad allegation that because of inadequate restrictions, the government unfairly used the information it obtained from the mental examination to plan its cross-examination of her and achieve a tactical advantage. Without any support her claims must fail. The government's experts never testified, so none of their statements could have been used improperly against defendant at trial. July does not point to any specific instances in which the government's cross-examination was based upon information obtained from the mental examinations. Thus, we find no reversible error resulting from any violation of July's Fifth Amendment rights.
 
 
 17
 July raises a Sixth Amendment question when she charges that the examination was in fact a "mental deposition." The Sixth Amendment right to counsel in the context of a mental examination encompasses the right to notice and the right to consult counsel. Powell v. Texas, 492 U.S. 680, 685 n. 3 (1989); United States v. Garcia, 739 F.2d 440, 442 (9th Cir.1984). Here, defendant was fully informed of the time and scope of the examination and there was no Sixth Amendment violation in this respect.
 
 
 18
 It does appear that the scope of the exam, which apparently included the factual circumstances of the crime itself, was too broad. Dr. Walker was permitted to testify only that July had symptoms consistent with BWS and not on the ultimate issue of whether July acted in self-defense. Thus, it appears that the government experts should not have been permitted to examine July about the circumstances of the crime.[1] Nevertheless, the government's experts never testified, and there was no apparent use of the information or potential prejudice and therefore no reversible error. See Satterwhite, 486 U.S. at 257-58; see also Cape v. Francis, 741 F.2d 1287, 1297 (11th Cir.1984) (determination of whether or not there has been a violation of the Sixth and Fourteenth Amendments depends upon the actual use of expert's testimony at trial), cert. denied, 474 U.S. 911 (1985).
 
 
 19
 B. EVIDENCE ADMITTED PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)
 
 
 20
 July contends that the district court abused its discretion in admitting bad acts evidence presented by ten witnesses. After a careful review of the trial transcript, we conclude that any error was harmless.
 
 
 21
 The court reviews a trial decision on admissibility under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Lewis, 837 F.2d 415, 418-19 (9th Cir.), cert. denied, 488 U.S. 923 (1988).
 
 
 22
 Under Rule 404(b), evidence of a defendant's prior crimes or wrongful acts is inadmissible to show bad character such that she is "more likely to have committed the crime with which [she was] charged." United States v. Brown, 880 F.2d 1012, 1014 (9th Cir.1989). Wrongful acts are admissible to show motive, intent, knowledge, identity, or absence of mistake or accident. Brown sets out five requirements for admissibility on one of these grounds, discussed below. Id. The government has the burden of proving admissibility. United States v. Spillone, 879 F.2d 514, 518-19 (9th Cir.1989), cert. denied, 111 S.Ct. 210 (1990).
 
 
 23
 July first objects to testimony concerning incidents of spouse abuse between July and her husband in February, March and June of 1985 at China Lake on the grounds that they were too old and highly disputed. The government's theory of the case was that the prior bad acts these witnesses testified about were part of a course of conduct demonstrating planning, criminal intent and July's lack of fear of her husband, all of which were relevant to the issues of premeditation and lack of self-defense. We conclude that this evidence was properly admitted under Brown to show intent to kill and malice.
 
 
 24
 First, under Brown evidence of the prior conduct must tend to show an element of the charged offense that is a material issue in the case. Brown, 880 F.2d at 1014. Where a defendant claims self-defense and denies any intent to kill as July did here, intent is a material issue to be decided by the jury. United States v. Weddell, 890 F.2d 106, 107-08 (8th Cir.1989). In addition, prior abuse of a victim can be evidence of malice. See United States v. Boise, 916 F.2d 497, 501-02 (9th Cir.1990), cert. denied, 111 S.Ct. 2057 (1991). A defendant's admission of stabbing, although coupled with a self-defense claim as it was here, can nevertheless imply malice. United States v. Johnson, 879 F.2d 331, 335 (8th Cir.1989).
 
 
 25
 Second, in certain cases including evidence used to prove intent, the evidence must be similar to the offense charged. Brown, 880 F.2d at 1014; United States v. Hadley, 918 F.2d 848, 851 (9th Cir.1990) (if used to prove intent, prior act must be similar to act charged), petition for cert. granted, 60 U.S.L.W. 3598 (U.S. Mar. 2, 1992). Here, the prior acts were similar to the offense charged.
 
 
 26
 Third, the prior acts must be proved by clear and convincing evidence, except that if the prior conduct is admitted because of its similarity to the act charged, the evidence need be only sufficient to support a finding by the jury that the defendant committed the similar act. Brown, 880 F.2d at 1014. The jury here could " 'reasonably conclude that the act[s] occurred and the defendant was the actor.' " United States v. Hadley, 918 F.2d at 851, quoting Huddleston v. United States, 485 U.S. 681, 689 (1988). That is, the jury could conclude that defendant yelled at and threatened and/or cut her husband with a knife. However, the highly disputed aspect of the testimony was who was the aggressor in the incidents. Most of the witnesses did not see an entire episode, and therefore could not testify from personal knowledge about the origin of events. Nevertheless, the evidence was sufficiently proven under Huddleston.
 
 
 27
 Fourth, the prior conduct cannot be too remote in time. Brown, 880 F.2d at 1014. The three year interval between most of the incidents and the homicide does not make them too remote. "Similarity in space and practice" between the prior act and the crime charged can compensate for a long interval between them. Hadley, 848 F.2d at 851. Here, the prior acts are disputes between defendant and her husband, some of which involved defendant's use of a knife. Because of this similarity, the incidents were not too remote.
 
 
 28
 Fifth, the danger of unfair prejudice cannot substantially outweigh the probative value. Brown, 880 F.2d at 1014. Obviously, these incidents are highly prejudicial, but the prejudice is not unfair, given the similarity of the conduct. Thus, the last requirement of Brown is met and we uphold the admission of evidence of altercations between defendant and her husband.
 
 
 29
 Other witnesses testified to threatening statements defendant made against her husband, and derogatory ways she described him, within three to four months of his death. This testimony also meets the requirements of Brown.
 
 
 30
 July objects to bad character testimony from the victim's brother, Marvin July, and from a former boyfriend, Andre McInnis. We agree that some of their testimony was admitted in error. Whether bad acts evidence erroneously admitted requires reversal depends on whether the error was harmless, i.e., it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict. Brown, 880 F.2d at 1016. Here, the jury found July guilty of second degree murder. The properly admitted evidence supports a finding of malice implicit in the jury's second degree murder conviction. Therefore, even if the erroneously admitted evidence was excluded, it is not likely that the jury would have found her guilty of voluntary manslaughter or acquitted her based on her BWS self-defense theory.
 
 
 31
 Acquittal was unlikely because in addition to the properly admitted evidence of threats and knife attacks, several neighbors gave very damaging testimony about what they heard the morning of Mr. July's death.
 
 
 32
 There was some evidence of voluntary manslaughter, based on either an imperfect self-defense theory or a "heat of passion" killing. Nevertheless, after reviewing the evidence presented at trial, we cannot say that it is more probable than not that the jury would have chosen the voluntary manslaughter verdict or acquittal.
 
 C. INSTRUCTIONAL ERROR
 
 33
 Defendant claims that the court erroneously refused to instruct on the offense of involuntary manslaughter.
 
 
 34
 When reviewing jury instructions for error, the instructions must be viewed as a whole. United States v. Marabelles, 724 F.2d 1374, 1382 (9th Cir.1984). A defendant is entitled to an instruction based upon her theory of the case if the record contains evidentiary support for the theory and the theory is supported by law. United States v. Lesina, 833 F.2d 156, 160 (9th Cir.1987).
 
 
 35
 Defendant cites United States v. Manuel, 706 F.2d 908, 915 (9th Cir.1983) in support of her claim. The Manuel court concluded that criminally negligent use of non-lethal force could support either a claim of self-defense or involuntary manslaughter. Manuel, 706 F.2d at 915. The district court here correctly ruled out involuntary manslaughter because defendant testified to use of deadly force. Because there was no factual support for an involuntary manslaughter instruction, we hold that the district court's ruling was not reversible error.
 
 
 36
 We have examined July's other claims of instructional error and we find them meritless.
 
 D. BRADY VIOLATION
 
 37
 July charges that the government failed to turn over evidence of child abuse by Mr. July and failed to supply the defense with a favorable report by Dr. Ewing.
 
 
 38
 The court reviews de novo a challenge to a conviction based on a Brady violation. United States v. Monroe, 943 F.2d 1007, 1012 (9th Cir.1991), petition for cert. filed, (U.S. Jan. 17, 1992) (No. 91-1186). The prosecutor has a duty to disclose, at least upon request, all evidence which is material either to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963).
 
 
 39
 July charges that Dr. Ewing, the government's expert, formed an opinion favorable to the defense and then failed to turn over a report to the defense. However, Dr. Ewing never wrote a report. He withdrew from the case and never testified. July got Dr. Ewing's notes and the tapes of his interview with defendant. In addition, the court ruled that July could call Dr. Ewing but she declined to do so. We see no Brady violation on these facts.
 
 
 40
 July's second Brady claim is also meritless. The defense charges that the government failed to turn over an investigative file containing a reference to a report containing Brady material that July could have used to impeach Marvin July. This information, although relevant, was not material to guilt or punishment.
 
 
 41
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the time the court ruled on the scope of the examination, it had not yet ruled on the scope of the testimony