**UNITED STATES of America, Plaintiff,**

**v.**

**Ricky Jerome ROBINSON, Defendant.**

**Crim. A. No. 91–0099–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Oct. 14, 1992.

Morgan Scott, Stephen Baer, Asst. U.S. Attys., Roanoke, Va., for U.S.

David O'Donnell, Walter F. Green, IV, Harrisonburg, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The Government's Motion in Limine, filed June 11, 1992, to bar introduction of psychological expert testimony or limit the introduction thereof to the issue of whether the defendant was insane at the time of the offense is before the court.

Defendant filed notice of his intention to introduce expert testimony relating to his mental disease on May 29, 1992. All three

psychological evaluations of the defendant have shown that he was able to appreciate the nature and quality or wrongfulness of his acts at the time of the alleged murder. Thus, there is no need for the court to consider limiting psychological testimony to the issue of whether the defendant was insane at the time of the offense because defendant admits he is unable to present such a defense. Nevertheless, defendant wishes to offer testimony of mental disease solely to negate the element of premeditation. At the hearing on this motion, defense counsel proffered that Dr. Nicholas McClean–Rice, would testify that defendant is a paranoid schizophrenic and that one of the characteristics of a person with that mental disease is that he or she behaves compulsively. Defendant believes that this evidence of compulsive behavior being characteristic of persons with paranoid schizophrenia will serve to negate the element of premeditation necessary for a conviction of murder in the first degree in this case.

## I.

■■■ A motion to suppress serves to exclude irrelevant or otherwise inadmissible evidence prior to trial, rather than relying upon sustained objections at trial. A ruling on a motion in limine is subject to change as events at trial unfold. *Moore v. General Motors Corp., Delco Remy Div.*, 684 F.Supp. 220 (S.D.Ind.1988). While a trial judge has broad discretion to determine the relevance of proffered evidence, it is inappropriate to exclude evidence as irrelevant without the context of trial.

■■■ The first question is whether the Insanity Defense Reform Act (IDRA) of 1984, Pub.L. No. 98–473, Title II, § 402(a), 98 Stat. 2057, § 20, recodified at 18 U.S.C. § 17, precludes evidence of mental disease for any purpose other than proving the affirmative defense of insanity. Section 17 states:

> (a) Affirmative defense.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute evidence. (b) Burden of proof.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

Thus, mental disease or defect which is not of a severe enough nature to raise the defense of insanity "does not otherwise constitute evidence." Nevertheless, interpretation of the scope and intent of the second sentence in subsection (a) has produced some disagreement among the circuits. Most courts of appeals that have considered the issue have held that IDRA did not render inadmissible psychiatric testimony tending to show that defendant was incapable of forming the requisite intent to commit the crime charged. *United States v. Bartlett*, 856 F.2d 1071, 1081–82 (8th Cir.1988); *see also, United States v. Brown*, 880 F.2d 1012, 1017 (9th Cir.1989) (finding that evidence of mental defect offered to show that defendant lacked specific intent to commit first-degree murder could not be excluded on basis of IDRA); *United States v. Newman*, 889 F.2d 88, 91 n. 1 (6th Cir.1989) (holding that both the insanity defense and diminished capacity defense are possible even after enactment of IDRA).

However, other courts have concluded that IDRA abolished the defense of diminished capacity, or testimony of mental disease solely to negate an element of intent, *United States v. White*, 766 F.2d 22, 25 (1st Cir.1985); *see also, United States v. Hood*, 857 F.2d 1469 (4th Cir.1988) (affirming district court's exclusion of psychiatric testimony that defendant lacked the mens rea to steal) (text in WESTLAW); *but see, United States v. Moran*, 937 F.2d 604 (4th Cir.1991) (noting that the *Hood* ruling was against the probably unanimous view of all the other courts of appeals that had considered the issue authoritatively) (text in WESTLAW).

The plain language of § 17 is unambiguous in stating that, apart from rising to a level sufficient to support a defense of

insanity, mental disease does not constitute evidence of an affirmative defense. Moreover, the legislative history of this act is unusually clear in stating:

> The Committee also included language in section 20 explicitly providing that mental disease or defect other than that which renders the defendant unable to appreciate the nature and quality or wrongfulness of his acts does not constitute a defense. This is intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony.

S.Rep. No. 225, 98th Cong., 2d Sess. 229 (1983), reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3411. The court concludes that IDRA precluded evidence of mental disease for any other affirmative defense than the insanity defense.

■ However, IDRA did not specifically address whether evidence of mental disease could be introduced to rebut evidence of premeditation offered by the government. Some courts have relied on language in the House Report, "Mental disorders will remain relevant, of course, to the issue of the existence of a mental state required for the offense, such as the specific intent required for certain crimes. This accords with current practice." H.R.Rep. No. 98–577, 98th Cong. 1st Sess. 15 n. 24 (1983).[1] As summarized in *United States v. Pohlot,* 827 F.2d 889, 890 (3rd Cir.1987):

> We conclude that although Congress intended § 17(a) to prohibit the defenses of diminished responsibility and diminished capacity, Congress distinguished those defenses from the use of evidence of mental abnormality to negate specific intent or any other mens rea, which are elements of the offense. While the contours of the doctrines of diminished responsibility and diminished capacity are unclear, the defenses that Congress intended to preclude usually permit exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection; however, these matters do not strictly negate mens rea.

This rationale holds that evidence of mental abnormality, apart from establishing an insanity defense, may only be admitted in the very narrow circumstances where the trial judge concludes that it will negate specific intent or other mens rea. We have arrived at an evidentiary question of whether the proffered expert testimony is relevant to the premeditation necessary for conviction of first degree murder or is, instead, the type of evidence Congress intended to preclude.

Defendant submitted Dr. McClean–Rice's Psychiatric Evaluation of Ricky Robinson performed on May 27, 1992, to the court on October 7, 1992. It states, in pertinent part, that:

> I believe that Mr. Robinson is suffering from the early stages of paranoid schizophrenia and his functioning has been very marginal as a result ... Even without this evidence, I believe it would be a very dangerous course of action to declare him fully responsible for his actions at the time of the alleged offense. Given his stated beliefs and in particular his concern prior to the death of Denise Robinson [sic], that she and others were plotting to kill him. [sic] If this patient does not suffer from paranoid schizophrenia which I believe he does then he was either acting in self-defence against a real plot to kill him or he is lying. If this is a scheming, cunning man who has been surreptitiously devising a plan to obtain a plea of insanity or to infer that he was in a condition of diminished mental responsibility at the time of the alleged defense then he is an expert on the symptoms and signs of paranoid schizophrenia well beyond that which his edu-

---

1. The court notes that the House Report emanated from the first session of the 98th Congress, while the Senate Report was recorded in the second session, closer to the time of passage of the final language.

cation and intelligence would suggest possible.

After careful review of Dr. McClean–Rice's report and conclusions, this court finds that the report states nothing relevant to defendant's ability to premeditate.

However, defendant states that he does not intend to introduce this report into evidence. Rather, he will rely on the live testimony of Dr. McClean–Rice to educate the jury on the symptoms of paranoid schizophrenia, particularly a tendency toward compulsive behavior, as well as the doctor's opinion that defendant suffers from this mental disease. This testimony is intended to negate the element of premeditation by stating the doctor's opinion that defendant may be a paranoid schizophrenic and people with that disease may behave compulsively.[2]

To the contrary, the statements in Dr. McClean–Rice's own report refute this leap of faith. The report fails to note any compulsive behavior by the defendant either observed by or known to the doctor. The report also details the defendant's planning activities in relation to the broader crime, of which the murder of Denise Roberson is alleged to be just a part, in stating that "within the fairly recent past Mr. Robinson had purchased several weapons including a semi-automatic AK47 rifle and ammunition for his weapons. He says he *planned* to use these to avenge the atrocities committed by dark-black skinned black people against light-skinned black people." Doctor's Report at 2. (emphasis supplied).

In the ultimate analysis, the testimony being proffered goes inevitably to an issue of diminished capacity by a sort of back door route. Although defendant is not legally insane, the court is being asked to admit evidence that defendant's mental disease caused him to act in a compulsive manner that the law must excuse. Defendant wishes to prove that he was partially insane in order to mitigate the punishment and degree of the offense, even though that partial insanity does not qualify as insanity under the prevailing test.

Assuming that the *ore tenus* testimony of Dr. McClean–Rice will generally follow the matters set out in his report, he could be expected to testify that "it would be a very dangerous course of action to declare him [the defendant] fully responsible for his actions ..." If the defendant is not "fully responsible" for his actions, then the doctor's testimony must permit the conclusion that the defendant had a diminished capacity. Such an analysis conflicts squarely with the statement in § 17— "Mental disease or defect does not otherwise constitute evidence."—as that language has been so clearly explicated by the legislative history stated previously, "The Committee also included language in § 20 (recodified as § 17) explicitly providing that mental disease or defect other than that which renders the defendant unable to appreciate the nature and quality or wrongfulness of his acts does not constitute a defense." This positive, unqualified statement in the legislative history hammers it home with brass nails in stating that the language of § 17 prevents the assertion of an affirmative defense "such as that the defendant had a 'diminished responsibility' or some similarly asserted state of mind which would serve to excuse the offense and open the door, once again, to needlessly confusing psychiatric testimony." There is no disagreement that Dr. McClean–Rice's finding of "early stages of paranoid schizophrenia" is a finding of a "mental disease or defect," so that the doctor's evidence would fall squarely within the prohibition of § 17. Thus, the court concludes that defendant's proposed expert testimony relating to mental disease offered to negate the element of premeditation is exactly the type of evidence Congress intended to preclude in passing IDRA. The court must bar the introduction of the psycholog-

---

2. Fed.R. of Evid. 704 states that expert testimony is prohibited "as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Therefore, defendant's expert testimony could not state either that defendant behaved compulsively in this instance or did not premeditate this crime.

ical expert testimony proffered to the court as precluded by Congress.