134 F.3d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory BERRY, Defendant-Appellant.
 No. 97-30120.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1997,
Decided Jan. 14, 1998.
 
 1
 Before: FLETCHER and O'SCANNLAIN, Circuit Judges, and SCHWARZER,** Senior District Judge.
 
 
 2
 MEMORANDUM*
 
 
 3
 Gregory Berry ("Berry") appeals his conviction on two counts of bank larceny in violation of 18 U.S.C. § 2113(b), one count of conspiracy to commit bank larceny in violation of 18 U.S.C. § 371, and one count of possession of an altered telecommunications instrument in violation of 18 U.S.C. § 1029(a)(5).[1] Berry raises two issues on appeal: (1) the district court abused its discretion in denying Berry's motion to sever; and (2) the district court erroneously admitted hearsay evidence over Berry's objection. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. Motion to Sever
 
 4
 Berry argues that the district court erroneously denied his motion to sever his trial from that of one of his co-defendants, Shelease Lynch ("Lynch"), and that the jury was precluded from making a reliable determination of his guilt or innocence as a result of Lynch's testimony at the joint trial. Berry moved to sever after he learned that Lynch planned to testify, in her own defense, that she failed to inform the police of Berry's involvement in the bank robberies because she feared that Berry would react violently against her. Berry alleges he was prejudiced by Lynch testifying that Berry had frequently beaten her, and even fired a gun at her, since their relationship began in 1991.
 
 
 5
 Fed.R.Crim.P. 14 permits courts to "grant a severance of defendants if it appears that a defendant ... is prejudiced by a joinder ... of defendants, even if joinder is otherwise appropriate under Rules 8(b) and 12." We review the denial of a motion to sever for abuse of discretion. United States v. Cruz, 127 F.3d 791, 798 (9th Cir.1997),
 
 
 6
 The party seeking reversal of a court's denial of a motion to sever must meet a heavy burden: "The test for abuse of discretion by the district court is whether a joint trial was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." United States v. Baker, 10 F.3d 1374, 1386 (9th Cir.1993). Moreover, severance should be granted only if a serious risk exists that "a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).
 
 
 7
 The district court denied the motion to sever as untimely.[2] Berry argues that the judge erred in his timeliness determination because Berry had originally moved for severance by the pretrial motion due date, although on other grounds.[3] Berry misconstrues the significance of his original severance motion. Because his later motion was based on different grounds from his original motion, it should be considered as a separate motion, not as a renewed motion.
 
 
 8
 In the alternative, Berry argues that the district court abused its discretion by not granting relief under Rule 12(f) from the waiver of his severance motion for "cause." Berry contends that his attorney did not learn of Lynch's proposed defense until one week after the pretrial motion due date and one week before trial, and that he was precluded from disclosing the basis of his severance motion (Lynch's proposed defense) by the joint defense agreement.
 
 
 9
 The district court rejected Berry's arguments on two grounds. First, the court found that Berry's counsel knew about the assault evidence prior to the pretrial motion due date, even if he did not know Lynch planned to use the evidence as a defense.[4] Second, the district court believed that Berry's counsel's obligation of confidentiality under the joint defense agreement did not constitute "cause" under Rule 12(f).
 
 
 10
 We need not decide, however, whether the district court abused its discretion in not finding cause under Rule 12(f). Assuming arguendo that the motion's tardiness was justified by cause, the ultimate question is whether the court abused its discretion by denying Berry's severance motion.
 
 
 11
 Berry claims that he was denied due process because his motion was denied. He asserts he suffered prejudice from the admission of testimony and physical evidence of his past violent relationship with co-defendant Lynch. See Bruton v. United States, 391 U.S. 123, 131 n. 6 (1968) ("An important element of a fair trial. is that a jury consider only the relevant and competent evidence bearing on the issue of guilt or innocence."). Berry contends that the failure to sever allowed the jury to hear highly inflammatory evidence that would not have been admissible against him in a separate trial. See Zafiro, 506 U.S. at 539 ("Such a risk [of compromising a specific trial right of one of the defendants] might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant.").
 
 
 12
 In Berry's case, the jury heard evidence that Berry repeatedly assaulted Lynch, attempted to shoot her, threatened to break into her mother's house if she did not pay him money that she owed, threatened her life if she did not commit perjury in state court where she had filed assault charges against him, and exploited her financially. Given the magnitude and inflammatory nature of the testimony, which would have been inadmissible against Berry in a severed trial, we find that Berry was prejudiced by the district court's failure to sever his trial from Lynch's.
 
 
 13
 However, "Rule 14 does not require severance even where prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538. The Court recognized that "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." Id. The district court remedied the potential prejudice of Lynch's testimony with limiting instructions. Prior to Lynch's testimony, the court cautioned the jury: "You are about to hear testimony that defendant Gregory Berry allegedly assaulted defendant Shelease Lynch. You may consider this evidence when you consider Shelease Lynch's state of mind, but you must not consider it in deciding the guilt or innocence of Gregory Berry." This instruction was repeated to the jury before deliberations. Juries are presumed to curative instructions, Zafiro, 506 U.S. at 540, and there is nothing in the record to suggest that the jury disregarded the instructions.
 
 
 14
 Moreover, there was sufficient evidence against Berry to negate any prejudice that may have been caused by Lynch's testimony. See United States v. Nguyen, 88 F.3d 812, 816-17 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 443 (1996). The government presented the uncontradicted testimony of Samantha Knight, a coconspirator, that described Berry's role in planning the bank robberies. Knight testified that Berry devised a plan to stage a robbery at the bank where his girlfriend Lynch, worked as a teller. Because Lynch's fellow employees recognized Berry, Berry asked Knight to enter the bank and to demand the money from Lynch's window and asked Stephen Pankey to drive the getaway car. When the fruits of the first robbery proved unsatisfactory, Berry suggested that they rob the bank again, but that he would call Lynch in advance to confirm that her drawer contained a substantial sum. Knight's testimony was corroborated by substantial evidence: hotel records showed that Berry's brother paid for the hotel rooms used by the conspirators after the robberies; Berry's admission that he owned the car used during the robberies; proof that he retrieved the abandoned car after the first robbery; an eyewitness confirmation of the license plate number of the getaway car; the record of a cellular phone call placed by Berry to Lynch at the bank thirty minutes before the second staged robbery to confirm that her drawer contained a large sum of money; and the record of cellular phone calls placed by Berry to Knight at the hotels where she was hiding after the two robberies. In addition, the government provided the phone records and testimony of Michelle Dull, the cellular customer whose account was billed for the calls made by Berry on his cloned phone. The evidence appears sufficient for a jury to find Berry guilty of the charges. Although severance or bifurcation may have been the preferred alternative, we conclude that the district court did not abuse its discretion by refusing to sever Berry's trial from Lynch's.
 
 II. Hearsay Evidence
 
 15
 Berry also contends the court erroneously allowed Officer Michael Magan to testify that Samantha Knight had directed him to various places where she had gone during and after the commission of the crime. The district court overruled Berry's hearsay objection because the statements were "not being admitted for the truth of the contents."
 
 
 16
 This court reviews de novo the district court's construction of the hearsay rule. United States v. Collicott, 92 F.3d 973, 978 (9th Cir.1996). If hearsay testimony is admitted erroneously, the reviewing court must determine whether the error was harmless beyond a reasonable doubt. United States v. Payne, 944 F.2d 1458, 1472 (9th Cir.1991).
 
 
 17
 According to Berry, "[t]he purpose of this testimony was to support Knight's veracity by showing that she knew of these places without learning of them from law enforcement." Under that interpretation, the trial court did not err in determining that the statements were not hearsay because they were not offered to prove that the defendants had visited the identified places during the commission of the crime.
 
 
 18
 However, even if we were to accept that Officer Magan's testimony was hearsay, its admission was harmless. An erroneous admission of evidence is harmless if it is more probable than not that its admission did not affect the jury's verdict. United States v. Brown, 880 F.2d 1012, 1016 (9th Cir.1989). It is highly unlikely that this testimony tipped the scales against Berry: the contested testimony occupied three pages of the trial transcript; contained no direct references to Berry; and was relatively insignificant compared to the government's evidence linking Berry to the crimes in question.
 
 
 19
 Berry's conviction is AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Berry possessed a "clone phone," that is, a cellular phone which had been fraudulently reprogrammed to make calls that would be billed to another cellular customer's account. He used this phone to make calls in connection with the two bank robberies, as well as numerous personal calls
 
 
 [2]
 Berry moved for severance on the morning of trial, well after the pretrial motion due date. Fed.R.Crim.P. 12(b)(5) requires a severance motion to be raised before trial, and under Fed.R.Crim.P. 12(f), failure to raise pretrial motions by the time set by the court "shall constitute waiver ... but the court for cause shown may grant relief from the waiver."
 
 
 [3]
 Berry originally had moved for severance based on a perceived Bruton problem. The court denied the motion on the merits, and Berry does not appeal its denial
 
 
 [4]
 As early as three months before trial, at the date of the pretrial detention hearing, Berry's counsel knew some evidence existed that Berry had assaulted Lynch on at least one occasion. The court ordered Berry detained, partly on the ground "that he may be a danger to the cooperating co-conspirator [Lynch]." However, Berry was released from detention after it was learned that Lynch had recanted her testimony against him in an unrelated state assault case