**UNITED STATES of America, Plaintiff,**

v.

**Robert William Dion FRISBEE, Defendant.**

**No. CR–85–0762 EFL.**

United States District Court,
N.D. California.

Dec. 20, 1985.

Robert L. Dondero, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

V. Roy Lefcourt, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION

LYNCH, District Judge.

### I. Introduction

On August 19, 1985, defendant Robert Frisbee was indicted for first degree murder in violation of 18 U.S.C.A. section 1111 (West Supp.1985). The murder allegedly occurred on a commercial cruise ship that was sailing to the port of San Francisco in Pacific waters off the coast of California. The deceased was an 80 year old woman who apparently died from multiple traumas to the head. The defendant had been traveling with the deceased on the cruise ship, sharing a suite with her.

After the cruise ship docked in San Francisco, authorities arrested the defendant. In the course of an interview, the defendant reportedly indicated that, to the best of his knowledge, he was the only person in the room other than the victim at the time the murder allegedly occurred. *United States v. Frisbee*, No. CR–85–0762 EFL (N.D.Cal.1985) (Detention Order). The defendant also allegedly stated to the investigating authorities that he "did believe he committed the crime, in view of the fact that no one else was in the room at the time." *Id.* (quoting an affidavit of Jan K. Smith, Special Agent for the Federal Bureau of Investigation). According to psychiatric reports submitted to the Court by the defendant's counsel, the defendant has, however, never had any recollection of the actual events surrounding the death of the deceased. The reports also indicate that the defendant has suffered from periodic blackouts or seizures and from amnesia, all caused by serious alcohol abuse over many years.

Pursuant to rule 12.2(b) of the Federal Rules of Criminal Procedure, the defendant has given notice to the government that he "intends to introduce expert testimony relating to a mental disease or defect or ... other mental condition of the defendant bearing upon the issue of his guilt ...." Fed.R.Crim.P. 12.2(b). More specifically, the defendant has indicated that he will offer expert testimony supporting his contention that due to some combination of pathological intoxication, organic brain damage, and an alcoholic blackout or seizure, he did not possess the requisite specific intent during the relevant time period to have committed first degree murder.[1]

Currently before the Court is a motion brought by the government in opposition to the admission of psychiatric testimony by the defendant to negate the existence of specific intent. The government contends that the recently enacted section 20 of Title 18 of the United States Code, Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 402, 98 Stat. 1837, 2057, prohibits the admission of psychiatric testimony to negate the existence of an element of the crime unless such testimony is admitted in conjunction with an insanity defense.

While the government bears the burden of proving beyond a reasonable doubt all elements of the crime charged, *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), section 20 makes the insanity defense an affirmative defense that the defendant must prove by clear and convincing evidence. 18 U.S.C.A. § 20(b) (West Supp.1985). Consequently, the government's argument, if successful, would prohibit the defendant from using psychiatric testimony to negate specific intent, an element the government must prove beyond a reasonable doubt, but would allow the admission of such evidence to prove insanity, an affirmative defense

that the defendant must prove by clear and convincing evidence. For the reasons stated below, the Court rejects the government's argument. The Court will allow expert testimony on the issue of specific intent but will limit the scope and use of such evidence in the manner described in the final section of this Opinion.

## II. Admissibility Prior to Section 20 of Expert Testimony on the Issue of Specific Intent

It is quite clear that, prior to the enactment of section 20, the Ninth Circuit allowed the admission of expert testimony to negate the existence of specific intent. In *United States v. Erskine,* 588 F.2d 721 (9th Cir.1978), the court held that a "trial court has wide latitude in admitting or excluding psychiatric testimony on the question of a defendant's incapacity to form specific intent ..." and that the "defendant was entitled to introduce competent evidence pertaining to the defense of lack of specific intent." *Id.* at 722–23.

While there seems to be little dispute between the defendant and the government concerning the state of the law in the Ninth Circuit prior to the enactment of section 20, the parties disagree over the effect of section 20. It is this dispute which the Court must now resolve.

## III. Effect of Section 20

Section 20 provides as follows:

(a) AFFIRMATIVE DEFENSE.—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.

---

**1.** *United States v. Frisbee,* No. CR–85–0762 EFL (N.D.Cal.1985) (Defendant's Offer of Proof). The defendant's counsel has also indicated that he intends to submit evidence showing that the defendant is "an extremely passive-dependent, non-aggressive individual for whom an act of deliberate violence would be totally out of character." *Id.* Such evidence is generally admissi-

ble under rule 404(a)(1) of the Federal Rules of Evidence, Fed.R.Evid. 404(a)(1), if the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* Fed.R.Evid. 401, 402, 403.

Mental disease or defect does not otherwise constitute a defense.

(b) BURDEN OF PROOF.—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

18 U.S.C.A. § 20 (West Supp.1985).

The government argues that the language of section 20(a) providing that "[m]ental disease or defect does not otherwise constitute a defense" is intended to exclude all psychiatric testimony not admitted in conjunction with an insanity defense. The Court disagrees. As discussed below, the Court believes that section 20 is not intended to limit the admissibility of evidence negating the existence of specific intent; rather, the Court finds that the section is intended to narrowly restrict situations in which mental disease or defect will excuse an otherwise guilty defendant. In short, the Court finds that section 20 represents an attempt by Congress to define the circumstances in which an otherwise culpable defendant will be excused for his or her conduct because of mental disease or defect, and that the section has no effect on the admissibility of evidence offered by a defendant to negate the existence of specific intent and thereby to show his or her innocence. This conclusion is supported by the legislative history of section 20 and the overall statutory scheme of which section 20 is a part.

A.  Legislative Intent.

■  Section 20 makes the defense of insanity an affirmative defense. The term "affirmative defense" has generally referred to defenses that must be affirmatively raised by the defendant and that are based on justifications or excuses for conduct that is otherwise criminal. See W. LaFave & A. Scott, Criminal Law 152 (1972). Consequently, evidence used to negate the existence of an element of the crime would not traditionally be considered part of an affirmative defense because the evidence is used to show innocence, as opposed to an excuse or justification for an otherwise criminal act.

The legislative history of section 20 indicates that when Congress used the term "affirmative defense" in section 20, it intended that the term be given its traditional meaning and, consequently, did not intend on addressing the question of the admissibility of expert testimony on the issue of guilt or innocence. In discussing the language of section 20 that the government relies on in making this motion, Senate Report 225 states as follows:

The Committee also included language in section 20 explicitly providing that mental disease or defect other than that which renders the defendant unable to appreciate the nature and quality or wrongfulness of his acts does not constitute a defense. This is intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other *affirmative defense,* such as that the defendant had a "diminished responsibility" or some similarly asserted state of mind which would serve to *excuse* the offense and open the door, once again, to needlessly confusing psychiatric testimony.

S.Rep. No. 225, 98th Cong., 2d Sess. 229, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3411 (emphasis added). The Report's discussion of an affirmative defense as involving an "excuse" for an "offense" indicates that section 20 was written only to delimit when mental disease or defect will be allowed to excuse a criminal offense.

Furthermore, other language contained in the same Senate Report indicates that Congress clearly understood that section 20 would not have the effect of making expert testimony on the issue of specific intent inadmissible unless offered in conjunction with an insanity defense. In describing why section 20 uses the term "severe," the paragraph of the Report directly following the language quoted above states:

The provision that the mental disease or defect must be "severe" was added to section 20 as a Committee amendment. As introduced in S. 829, the provision referred only to a "mental disease or

defect." The concept of severity was added to emphasize that nonpsychotic behavior disorders or neuroses such as an "inadequate personality," "immature personality," or a pattern of "antisocial tendencies" do not constitute the defense. The Committee also intends that, as has been held under present case law interpretation, the voluntary use of alcohol or drugs, even if they render the defendant unable to appreciate the nature and quality of his acts, does not constitute insanity or any other species of legally valid affirmative defense. [Footnote.]

*Id.*

In the footnote to the final sentence of the above-quoted paragraph, the Report acknowledges that "[o]f course, intoxication may negate a state of mind required for the commission of the offense charged." *Id.* at 229 n. 30, 1984 U.S.Code Cong. & Ad. News at p. 3411 n. 30 (citations omitted). Thus, the paragraph, as footnoted, indicates that while Congress recognized that section 20 would prohibit evidence of voluntary intoxication from being used to *excuse* admittedly criminal behavior, Congress also recognized that the section would not necessarily bar the admission of such evidence to *negate* the existence of an element of the crime charged. Consequently, the paragraph demonstrates that Congress intended that section 20 restrict the use of testimony regarding mental disease or defect only in conjunction with an affirmative defense, not the use of such testimony to negate the existence of an element of the crime charged.

2. In fact, "diminished responsibility," the term used in the Senate Report, has generally referred to a defense based on a showing that the accused suffered from an abnormality of mind that "substantially impaired his mental responsibility." *See* Cooper, *Diminished Responsibility— "Borderline Insanity" Direction,* 49 J.Crim.L. 118 (1985). "Diminished capacity," as opposed to "diminished responsibility," is the term most often used by American courts in referring to defenses aimed at negating specific intent, although this term has also been used in referring to a defense offering evidence of mental disease or defect to show mitigating circumstances. H.

The government argues that the legislative history supports its position. In support of this contention, the government cites language in Senate Report 225 stating that section 20 was intended to "insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a 'diminished responsibility' ...." S.Rep. No. 225, 98th Cong., 2d Sess. 229, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3404, 3411. The government argues that the use of psychiatric testimony to negate the existence of specific intent has been commonly referred to as a diminished capacity defense and, therefore, that the Senate Report clearly shows that Congress intended section 20 to exclude such testimony in the absence of an insanity defense.

The government's argument ignores the confusion surrounding the meaning of the terms diminished capacity and diminished responsibility. Courts and commentators have often confused two distinct concepts by referring to both as the defense of diminished capacity or diminished responsibility. Morse, *Undiminished Confusion in Diminished Capacity,* 75 J.Crim.L. & Crim. 1, 7–9 (1984). The terms have been used to refer both to using evidence of mental disease or defect to negate the existence of specific intent *and* to making a defense based on the argument that, as a result of a mental disease or defect, the accused, though guilty, is less responsible and should therefore be convicted of a lesser crime. *Id.*

Considered in context, it is clear that the Senate Report attached the latter meaning to the term "diminished responsibility."[2]

Fingarette & A. Hasse, *Mental Disabilities and Criminal Responsibility,* 117–18 (1979). Moreover, neither "diminished capacity" nor "diminished responsibility" are terms that accurately describe a defense aimed at negating intent. *See United States v. Demma,* 523 F.2d 981, 986 n. 14 (9th Cir.1975) (en banc). One commentator has described the difference between a diminished capacity defense and a defense negating intent as follows:

[T]he mens rea variant of diminished capacity is not a separate defense that deserves to be called "diminished capacity" or any other

As shown earlier, the Report's entire discussion surrounding the use of the term relates to limiting the definition of what may be used to excuse criminal behavior. The Report simply does not speak in terms of what may be admitted to negate specific intent.[3]

In summary, the Court finds that the legislative history shows that Congress did not intend section 20 to eliminate the use of expert testimony to negate specific intent. Section 20 deals with when criminal behavior will be excused, not with what types of evidence is admissible to show one's innocence. The clearest indication of that fact is the Senate Report's recognition that section 20 does not affect the admissibility of evidence of voluntary intoxication on the issue of specific intent. That recognition leads this Court to conclude that Congress did not intend that section 20 change the law regarding what type of evidence may be admitted on the issue of specific intent.

### B. Statutory Scheme.

■ The statutory scheme of which section 20 is a part also supports the Court's interpretation of that section. Both the federal rule of evidence governing the admissibility of expert testimony on a defendant's mental state or condition, Fed.R.Evid. 704(b), and the federal rule of criminal procedure requiring notice of a defendant's intent to use expert testimony on the defendant's mental condition as it pertains to the issue of guilt, Fed.R.Crim.P. 12.2(b),

are inconsistent with the government's argument that section 20 should be read as barring expert testimony on the issue of specific intent.

Rule 704(b) of the Federal Rules of Evidence, which was part of the same legislation as that which enacted section 20, Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, §§ 402, 406, 98 Stat. 1837, 2057, 2067, provides as follows:

> (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b).

Rule 704(b) is important in interpreting section 20 for two reasons. First, the rule clearly shows that Congress appreciated the distinction between evidence negating specific intent and evidence supporting a finding of insanity. The rule itself maintains that distinction by prohibiting an expert witness testifying with respect to *either* the existence of a mental element of a crime *or* a defense based on a mental condition from stating an opinion on the ultimate issue. Second, implicit in the rule's exclusion of ultimate issue testimony is Congress' acknowledgement that expert testimony may otherwise be admissible either on the issue of specific intent or on the

name connoting that it is some sort of special, affirmative defense.[footnote] The defendant is simply introducing evidence, in this case evidence of mental abnormality, to make the following claim: "I did not commit the crime charged because I did not possess the requisite mens rea." This is not an affirmative defense whereby the defendant admits or has proved against him the elements of the crime charged, but then raises a claim of justification or excuse. Further, a defendant claiming no mens rea because of mental disorder is not asserting some lesser form of legal insanity, that is, he is not claiming that he is partially or less responsible for the crime charged. Rather, the defendant is straightforwardly denying the prosecution's prima facie case by attempting to cast doubt on the prosecution's claim that a requisite mental element was

present at the time of the offense. He is claiming that he is not guilty of that crime at all, although he may be guilty of a lesser crime if all the elements of the latter are proven.

Morse, *Undiminished Confusion in Diminished Capacity*, 75 J.Crim. L. & Crim. 1, 6 (1984).

**3.** The California legislature's use of the term "diminished responsibility" also supports the conclusion that the term does not necessarily relate to specific intent. A recently enacted California statute explicitly prohibits diminished capacity and diminished responsibility as defenses, Cal.Penal Code § 28(b) (West Supp. 1985), but nevertheless allows "[e]vidence of mental disease, mental defect or mental disorder to negate the existence of mens rea." *Id.* § 28(a).

issue of insanity. The language of rule 704(b) and its legislative history clearly show that Congress recognized that expert testimony negating the existence of specific intent may be offered in cases not involving an insanity defense. Senate Report 225 contains the following discussion highlighting this fact:

> [T]he rationale for precluding ultimate opinion psychiatric testimony extends beyond the insanity defense to any ultimate mental state of the defendant that is relevant to the legal conclusion sought to be proven. The Committee has fashioned its Rule 704 provision to reach all such "ultimate" issues, *e.g.,* premeditation in a homicide case, or lack of predisposition in entrapment.

S.Rep. No. 225, 98th Cong., 2d Sess. 229, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3413.

Given that rule 704(b) was a part of the legislation in which section 20 was enacted, it seems clear that section 20 should not be interpreted as excluding expert testimony on the issue of specific intent.

Rule 12.2 of the Federal Rules of Criminal Procedure is also instructive. Paragraph (a) of rule 12.2 requires a defendant to give notice prior to trial of his or her intent to make an insanity defense, and paragraph (b) requires pretrial notice of a defendant's intent to offer "expert testimony relating to a mental disease or defect or any other mental condition bearing on the issue of his guilt . . . ." If the government's interpretation of section 20 is correct, it would seem that rule 12.2(b) is quite unnecessary. Nevertheless, Congress has not repealed the rule despite the fact that it has made other modifications to the rule since the enactment of section 20.[4] Although this omission is not overwhelming evidence of

congressional intent, it does seem inconsistent with the government's argument in this case.

In summary, the Court holds that section 20 was not intended to regulate the admissibility of expert testimony concerning the existence of a mental element of a crime. The Court believes that the sole purpose of section 20 was to narrowly define the circumstances in which mental disease or defect will excuse otherwise criminal conduct and was not intended to impede an accused's ability to show his or her innocence. To the extent that Congress desired to limit a defendant's ability to negate the existence of specific intent, it did so through rule 704(b) of the Federal Rules of Evidence, which excludes ultimate issue evidence on a defendant's state of mind. Therefore, the Court holds that the Ninth Circuit's rule allowing expert testimony negating the existence of specific intent is unaltered by the enactment of section 20.[5]

### IV. Admissibility of Expert Testimony

The defendant has indicated that he intends to submit psychiatric testimony in support of his contention that at the time the murder allegedly occurred he did not have the specific intent required for a first degree murder conviction. The defendant's experts will apparently testify that, due to some combination of pathological intoxication, organic brain damage, and an alcoholic blackout or seizure, the defendant could not have possessed the requisite specific intent during the relevant time period. For the reasons stated above, the Court will allow the testimony. Nevertheless, the nature and use of the testimony shall be restricted.

Pursuant to rule 704(b) of the Federal Rules of Evidence, the defendant's experts

---

**4.** Slight modifications to rule 12.2(b) were made by the Congress in legislation passed on October 30, 1984. Pub.L. No. 98–596, § 11, 98 Stat. 3134, 3138 (1984). As noted earlier, section 20 was enacted on October 12, 1984. Pub.L. No. 98–473, § 402, 98 Stat. 1837, 2057 (1984).

**5.** The government cites a number of well-reasoned opinions in which other jurisdictions have upheld a blanket prohibition on the admissibility of psychiatric testimony on the issue of

specific intent. *See, e.g., Muench v. Israel,* 715 F.2d 1124, 1143 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984). As explained earlier, the Ninth Circuit has, however, not adopted such a blank probition, chosing instead to grant trial courts broad discretion in determining the admissibility of such evidence given the circumstances of each case. This Court is required to apply the current law of the Ninth Circuit.

will not be allowed to state an opinion or inference as to whether the defendant did or did not form a specific intent to kill at the time the murder allegedly occurred. The legislative history of rule 704(b) states that the rule is intended to limit experts to "presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been." S.Rep. No. 225, 98th Cong., 2d Sess. 230, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3412. Thus, the Court will only allow the experts to testify concerning their diagnoses, the facts upon which those diagnoses are based, and the characteristics of any mental diseases or defects the experts believe the defendant possessed during the relevant time period. No testimony directly or indirectly opining on the issue of specific intent will be allowed.

Furthermore, the Court shall instruct the jury that the expert testimony admitted on the issue of specific intent shall only be considered on that issue. The Court will not allow the jury to consider the testimony in connection with the issue of whether the defendant may have possessed the necessary intent to commit lesser offenses requiring only general intent.[6] The Ninth Circuit has clearly stated that testimony concerning a defendant's ability to form specific intent should not be admitted in cases involving general intent crimes. *United States v. Erskine,* 588 F.2d 721, 723 (9th Cir.1978). Moreover, because the defendant is not making an insanity defense, the Court will not allow psychiatric evidence of mental disease or defect to be the basis for the jury's convicting the defendant of a lesser crime if the jury finds that all the elements necessary for a conviction of first degree murder have been proven by the government. To do otherwise would be a violation of section 20.

Finally, the Court obviously reserves the right to exclude any expert testimony that is, for other reasons, inadmissible. For example, expert testimony that is unduly confusing, misleading, or repetitive or that will not be of assistance to the jury in determining the issue of a specific intent will be excluded. *See* Fed.R.Evid. 403, 702. While the Ninth Circuit allows the admission of expert testimony on the issue of specific intent, the admission of such testimony is not "automatic." *United States v. Byers,* 730 F.2d 568, 570 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 333, 83 L.Ed.2d 270 (1984).

V. Conclusion

Defendant may offer expert testimony concerning whether he could have possessed the requisite mental state to have committed first degree murder at the time the murder allegedly occurred. However, this testimony may not include an opinion or inference on the ultimate issue of specific intent. Moreover, the Court will instruct the jury that the testimony may only be considered on the issue of whether the defendant possessed the specific intent necessary for a first degree murder conviction.

IT IS SO ORDERED.

---

**6.** Under the law of the Ninth Circuit, neither second degree murder nor voluntary manslaughter is a specific intent crime. *Kane v. United States,* 399 F.2d 730, 736 (9th Cir.1968),

*cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969); *United States v. Lopez,* 575 F.2d 681, 684 (9th Cir.1978).