896 F.Supp. 60 (1995)
UNITED STATES of America
v.
Richard P. SKODNEK, Defendant.
Cr. No. 94-10155-NG.
United States District Court, D. Massachusetts.
July 27, 1995.
*61 Robert A. Griffith, Schwartz, Shaw & Griffith, Boston, MA, John F. Palmer, Law Office of John F. Palmer, P.C., Boston, MA, James P. Brady, Jeffrey Denner, Cuddy Bixby, Boston, MA, Theodore A. Barone, Perkins, Smith & Cohen, Boston, MA, for defendant.
Michael K. Loucks, United States Attorney's Office, Boston, MA, for U.S.

MEMORANDUM AND DECISION
GERTNER, District Judge.

I. INTRODUCTION

The defendant is a psychiatrist who has been charged with making false claims to the medicaid program (42 U.S.C. § 1320a-7b), mail fraud (18 U.S.C. § 1341), obstruction of justice (18 U.S.C. § 1503) and witness intimidation (18 U.S.C. § 1512). In essence, the government contends that the defendant engaged in a 5 year long pattern of billing insurance providers for psychiatric services which he did not provide to patients. The government also contends that after its investigation commenced, the defendant contacted some of his former patients and attempted to prevent their cooperation with the government's investigation.
The defendant claims that he is not guilty by reason of insanity. Alternatively, he maintains that because of mental illness, he did not have the specific intent which is an element of each of the crimes with which he is charged.
Prior to trial, defendant filed a motion in limine on the admissibility of expert testimony concerning defendant's psychiatric condition. He seeks a ruling on the admissibility of psychiatric testimony tending to show that he lacked the mens rea necessary for a finding of guilt. The Government opposes, claiming that the evidence in question is nothing more than disfavored evidence of "diminished capacity," impermissible under First Circuit case law and barred by the Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. section 17, Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, section 402, 98 Stat. 1837, 2057.
In addition, the Government has filed two motions in limine seeking to bar the introduction of certain statements which the defendant made to his psychiatrist which the Government characterizes as self serving admissions, inadmissible as hearsay under Rule 802, Fed.R.Evid. The defendant opposes, claiming that the linchpin for admissibility of this evidence is whether the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 703, Fed. R.Evid.
After reviewing the briefs of both sides, I have concluded that the defendant is correct with respect to his motion in limine, namely, that psychiatric evidence is admissible on the issue of mens rea and does not run afoul of *62 the First Circuit's cases or the IDRA.[1] I have also concluded that the Government is correct with respect to its motion addressing the defendant's self serving admissions, subject to the limitations I have outlined below.
Defendant's motion for the admission of psychiatric testimony on mens rea is ALLOWED. Government's motion for the exclusion of certain self serving admissions is also ALLOWED with certain limitations.

A. Psychiatric Evidence on Mens Rea

1. The Constitutional Framework:
The prosecution always bears the burden of proving beyond a reasonable doubt the specific elements of the crime charged or of lesser included offenses. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970). Along with the act requirement, all crimes include a mental element, mens rea. If the prosecution fails to carry its burden of persuasion on that element, the defendant must be acquitted of any crime that includes such element in its definition.
Obviously, the defendant is entitled to introduce competent and relevant evidence to disprove any element of any crime charged, Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), subject to a few exceptions not relevant here. See Morse, Undiminished Confusion in Diminished Capacity, 75 J.Crim.L. & Criminology, 1, 5-7 (1984).
Logically, evidence with respect to mens rea should be no different than evidence concerning the act itself. Nor does it make sense to suggest that lay testimony that bears on mens rea can be admitted while expert testimony on the same subject cannot. Where mens rea is at issue, the decisionmaker is obligated to reconstruct a mental state largely on the basis of inferences from the defendant's utterances and actions at a relevant time. Lay witnesses are permitted to testify about the defendant's statements, actions, and demeanor, testimony that can be framed as first hand observations, or even opinion testimony under Rule 701, Fed. R.Evid.[2] That data  the defendant's actions, statements and demeanor  is precisely the data used by mental health experts to formulate diagnoses and opinions. It would be improper and indeed, unconstitutional, to cut out this one kind of competent evidence some would say, especially competent evidence from defendant's arsenal.
The Supreme Court, in related cases, has struck down "arbitrary rules that prevent whole categories of defense witnesses from testifying." See Washington v. Texas 388 U.S. 14, 22, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967) (striking down Texas statute prohibiting testimony of defendant's alleged accomplice); Crane v. Kentucky, 476 U.S. 683, 684, 106 S.Ct. 2142, 2143, 90 L.Ed.2d 636 (1986) (reversing Kentucky conviction for excluding circumstances surrounding confession); Chambers v. Mississippi, 410 U.S. 284, 292-302, 93 S.Ct. 1038, 1044-49 (ordering new trial because inter alia, court excluded adverse witness' out of court confession.). So long as criminal liability pivots in part on subjective states of mind, a rule categorically barring expert testimony on the subject may well be unconstitutional. See United States v. Pohlot, 827 F.2d 889, 901 (3d Cir.1987). Several courts of appeals have agreed. See Pohlot, supra; United States v. Frisbee, 623 F.Supp. 1217 (N.D.Cal.1985); United States v. Demma, 523 F.2d 981, 986 n. 14 (9th Cir.1975); United States v. Staggs, 553 F.2d 1073, 1074-1077 (7th Cir.1977). U.S. v. Bennett, 539 F.2d 45, 53 (10th Cir.) cert. denied 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); United States v. Brawner, 471 F.2d 969, 998-1002 (D.C.Cir.1972); Rhodes v. United States, 282 F.2d 59, 60 (4th Cir.1960) cert. denied, 364 U.S. 912, 81 S.Ct. 275, 5 L.Ed.2d 226 (1960); U.S. v. Twine, 853 F.2d 676, 678 (9th Cir.1988).
*63 Psychiatric testimony on mens rea raises different issues than does an affirmative defense, like the insanity defense. In an affirmative defense, the defendant admits or has proved against him the elements of the crime charged, but then raises a claim of justification or excuse. See Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). The defendant claims that as a result of a mental abnormality he is not responsible for the crime charged. We, as a society, believe that as a result of that mental abnormality, such a defendant is not culpable to the same degree as an individual who committed the very same act but without a mental disease or defect. And because mental illness is not like a spigot, to be turned on and off, but exists in varying degrees in different individuals, diminished responsibility defenses evolved alongside the insanity defense, reflecting degrees of culpability.[3] In contrast, where the defendant is seeking to introduce evidence on mens rea, he denies the prosecution's prima facie case entirely by casting doubt on their claim that all elements, including the mental ones, are present at the time of the offense. The claim is not "not guilty but excused or justified" because of mental illness or defect; the claim is simply, "not guilty."
Nor is psychiatric testimony on mens rea barred by the IDRA. The language of the statute and its legislative history, as many courts have held, establish that Congress intended to bar "affirmative defenses" that "excuse" misconduct  not evidence that disproves an element of the crime itself. Pohlot, 827 F.2d at 897: Frisbee, 623 F.Supp. at 1220. Section 17(a) states that, apart from the affirmative defense of insanity, "mental disease or defect does not otherwise constitute a defense."[4] Since the admission of psychiatric evidence to negate mens rea does not constitute a defense but only negates an element of the offense, section 17(a) of the IDRA, by its terms, does not bar it.
The legislative history parallels this interpretation:
Since the current insanity defense is derived from case law, the Committee is concerned that additional defenses based on mental disorders could be developed by the courts in order to circumvent the tighter requirements developed by Congress. Thus, the bill provides that the Committee's test constitutes the only affirmative defense based on mental disorder that will be applicable in Federal courts. Mental disorders will remain relevant, of course, to the issue of the existence of a mental state required for the offense, such as the specific intent required for certain crimes. This accords with current practice.
H.R.Rep. No. 98-577 98th Cong. 1st session (1983) House Report at 14. See also citations to legislative history in Frisbee, supra at 1221.
This interpretation is also buttressed by Rule 704 of the Fed.R.Evid. Rule 704(b) was part of the same legislation as was section 17 (Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, sections 402, 406, 98 Stat. 1837, 2057, 2067.) It provides:
b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an *64 opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.
The language suggests that Congress acknowledged that expert testimony may be admissible on either specific intent or insanity. See especially, S.Rep. No. 225, 98th Cong., 2d Sess. 229, reprinted in 1984 U.S.Code Cong. Ad. News, 3182, 3411.
Finally, the language of Rule 12.2 of the Federal Rules of Criminal Procedure is also supportive. Significantly, Rule 12.2 was not amended by the IDRA. Paragraph (a) of the rule requires a defendant to give notice prior to trial of his or her intent to make an insanity defense, while paragraph (b) requires pre trial notice of a defendant's intent to offer "expert testimony relating to a mental disease or defect or any other mental condition bearing on the issue of his guilt...." If testimony on a mental disease or defect to disprove mens rea were impermissible, as the government suggests, rule 12.2(b) would be unnecessary.[5]
Thus, I will not exclude a category of evidence, psychiatric evidence, from the defendant's challenge to the Government's proof of mens rea. At the same time, I understand the potential for abuse, given the potential vagueness of mental health testimony and the overlap between psychiatric evidence on mens rea and the insanity defense.[6] For example, the proferred mental health testimony may be so general, so little tied to the elements of the offense, that it is nothing more than an exhortation to the jury to find impairment and diminished responsibility. Or, the testimony while more specific, may go to explaining the psychological origins of the defendant's specific intent, rather than challenging whether he had the intent necessary to commit the crime in the first instance.[7] I feel confident that the usual evidentiary rules with respect to relevance, prejudice and expert testimony, coupled with the additional limitations on psychiatric testimony concerned with mental state (see below), will suffice to limit the testimony where appropriate.

B. Evidentiary Questions Concerning Expert Testimony on Mens Rea

1. Standards Governing Admissibility

In United States v. Shay, supra, the Court outlined the steps for evaluating the admissibility of expert psychiatric testimony under Rule 702, Fed.R.Evid., steps which apply here as well. First, a proposed expert witness must be qualified to testify as an expert by "knowledge, skill, experience, training, or education." Id. Second, the expert's testimony must concern "scientific, technical or other specialized knowledge." Id. Third, the testimony must "assist the trier of fact to understand the evidence or to determine a fact at issue." Id.

2. The Proferred Testimony

As a preliminary matter, the proffered testimony of the defense expert psychiatrist, and psychologist, meet these tests. At *65 this juncture, there is no meaningful challenge to the qualifications of the experts. Moreover, it is clear that their testimony concerns specialized knowledge, psychiatry and psychology, within the meaning of the rule. Nor is there anything unorthodox about their diagnoses or methods so as to take their testimony outside the permissible ranges. Finally, the testimony will assist the trier of fact in determining the issue of specific intent. Dr. Bursztajn and Dr. Kennedy opine inter alia that the defendant suffers from psychosis that he confuses internal and external reality, in addition to being an obsessive compulsive personality with a major depression. A thought disorder of the severity and type they suggest, if believed by the fact finder, surely bears on the question of mens rea.

3. Self Serving Admissions

The government challenges the admission of certain statements made by the defendant to his retained psychiatrist  statements about the offenses themselves, whether he sees himself as a "criminal," his ruminations on his own psychiatric profile, etc. The Government maintains that such statements are self serving admissions and inadmissible under Rule 802 and 801(d) of the Federal Rules of Evidence.
There is no question that the statements referred to by the Government are self-serving admissions and otherwise inadmissible. The defendant makes them to a psychiatrist retained by him after charges have been brought. At the same time, there is no question that, admissible or not, the expert witnesses may rely on such statements if they meet the standards of Rule 703, Fed. R.Evid. Rule 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
(Emphasis supplied.)
There is a question concerning which of the defendant's statements may be shown to the jury. The defendant maintains that the mere fact that a psychiatrist reasonably relies upon the statements of the defendant and indeed, is trained to weed out false and self-serving statements, should be sufficient to warrant their admission to illustrate the basis for the expert's opinion. The Government suggests that this Court must make an independent determination concerning the reliability of the statements and whether they are unduly prejudicial before allowing the jury to hear them in whatever form.
I agree with the Government. It is true that in general Rule 703, which permits experts to rely on otherwise inadmissible evidence, is essentially another exception to the hearsay rule. The fact that an expert relies on such data is effectively a proxy for the usual requirements of reliability and trustworthiness.[8] At the same time, the defendant's position would mean that the Court abdicate all responsibility to serve as a gate keeper to the introduction of otherwise inadmissible evidence. If the experts rely on such evidence, there would be no further inquiry. Nothing in the rule, the notes of the Advisory Committee, or the case law suggests this result. In Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 505 F.Supp. 1313, 1324 (E.D.Pa.1980), for example, the Court indicated that a trial judge should make a preliminary determination under Rule 104(a) of the trustworthiness of the data underlying the expert opinions in the litigation. Moreover, the court's obligations under Rule 403, to exclude evidence that is prejudicial, or that will confuse or mislead *66 the jury cuts across all categories of evidence, including expert evidence. See United States v. Frisbee, 623 F.Supp. at 1224.[9]
Accordingly, I will exclude the specific statements identified by the Government in its Second Motion in Limine concerning self serving statements of the defendant and such other statements that fail to meet the standards described above.
To the extent these statements are necessary to explain the basis for the expert's opinion, they may be presented to the jury subject to a limiting instruction. See Fox v. Taylor Diving & Salvage Co., 694 F.2d 1349, 1356 (5th Cir.1983). Once admitted, the court is obliged to admonish the jury that such evidence is to be considered solely as a basis for the expert opinion and not as substantive evidence. Paddack v. Christensen, 745 F.2d 1254, 1262 (9th Cir.1984).

4. The Form of the Evidence

Rule 704(b) expressly prohibits an expert from stating an opinion or inference as to whether the defendant did or did not form a specific intent to commit the offense charged. Legislative history suggests that the rule is intended to limit experts to "presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect, and what the characteristics of such a disease or defect, if any, may have been." S.Rep. No. 225, 98th Cong., 2d Sess. 230, reprinted in 1984 U.S.Code Cong. & Ad. News 3182, 3412.
SO ORDERED.
NOTES
[1] This ruling was originally made on the record in open court on Tuesday, July 11, 1995. This written memorandum is a fuller explication of the ruling I made on that day.
[2] Rule 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are a) rationally based on the perception of the witness and b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
[3] This approach "permits the jury to mitigate the punishment of a mentally disabled but sane offender in any case where the jury believes that the defendant is less culpable than his normal counterpart who commits the same criminal act. Unlike the mens rea model, however, the diminished responsibility defense does not permit the jury to distinguish between various degrees of liability of the same crime because the expert testimony admitted does not correlate to the various statutory mens rea elements. Instead, the diminished responsibility defense permits the jury to treat the offender's mental abnormality as a formal mitigating factor which `shall always remove the offense into a separate category carrying a lower maximum penalty.'" Arenella, The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage, 77 Col.L.Rev. 827, 829 (1977) (citing to H.L.A. Hart, Punishment and Responsibility, 15 (1968) (emphasis added)).
[4] The IDRA provides as follows:

(a) Affirmative defense. It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
[5] The First Circuit's recent decision in United States v. Shay, 57 F.3d 126 (1st Cir.1995) offers additional support. In Shay the Court remanded the case to review the admissibility of expert psychiatric testimony concerning the reliability of the defendant's statements, distinguishing such testimony from a diminished responsibility defense.
[6] For example, it is difficult to imagine a situation in which a psychiatrist concludes that because of a particular mental condition the defendant lacked the specific intent necessary for the crime, but finds that the defendant is not also insane within the meaning of section 17. I can envision the reverse  a situation in which an individual is found to be insane, i.e. cannot appreciate the wrongfulness of his conduct, but engages in purposive conduct sufficient to meet a specific intent test.

Nevertheless, this overlap between the two approaches does not detract from the legal question the right of the defendant to challenge the government's case in chief with whatever competent evidence is available to him.
[7] One way of interpreting United States v. White, 766 F.2d 22 (1st Cir.1985) for example is that the Court rejected psychiatric testimony on mens rea not categorically but because the testimony offered was irrelevant. While the defendant claimed that she lacked the mens rea to distribute cocaine because of the psychological domination of her mother, in reality, the defendant was simply explaining the psychological origins of her specific intent.
[8] "The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion. .... An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not hearsay in disguise." United States v. Williams, 447 F.2d 1285, 1290 (5th Cir.1971), cert. denied, 405 U.S. 954, 92 S.Ct. 1168, 31 L.Ed.2d 231 (1972).
[9] To be sure, these cases pre date the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1994). Nevertheless, nothing in that decision suggests that the trial court is obliged to abandon its gate keeping function with respect to the underlying data on which an expert's decision is based.