**UNITED STATES of America,**

v.

**Gregory TOWNS, Defendant.**

**No. 97–CR–50S.**

United States District Court,
W.D. New York.

June 11, 1998.

William Gillmeister, Buffalo, NY, for U.S.

Kimberly A. Schechter & Mary Beth Covert, Buffalo, NY, for Gregory Towns.

**DECISION AND ORDER**

SKRETNY, District Judge.

### *INTRODUCTION*

The parties' motions *in limine* are before this Court. Defendant Gregory Towns is

charged with one count of attempted bank robbery. Trial will commence with jury selection on Monday, June 15, 1998.

The government has moved to exclude expert testimony offered to negate *mens rea*. Should this Court deny the request for exclusion, the government asks in the alternative that any expert testimony be limited. Towns opposes the government's motion, and he has asked for a ruling in advance of trial which would allow him to introduce the evidence that the government seeks to exclude. This Court heard oral argument on the motions on June 2, 1998.

## BACKGROUND

The government alleges that on February 19, 1997, Towns entered a downtown Buffalo bank and handed a teller a note that demanded $275 and threatened to kill her. He was immediately taken into custody, where he made a number of incriminating statements, including the admission that he meant to rob the bank.

Towns contends that he never intended to rob the bank. He is prepared to elicit expert testimony that he suffers from a combination of schizoaffective disorder, borderline intellectual functioning, and alcohol dependency. Towns himself plans to testify that he entered the bank with the intent to get arrested in order to get psychiatric care.

Both sides filed motions *in limine* prior to the final pretrial conference. Each side requested various forms of relief, many of which related to the Defendant's intention to provide expert evidence of his intent on the day in question.

The government has moved for the following relief *in limine* [1]:

1. An order precluding the Defendant's expert from testifying;

2. If the Defendant's expert will be permitted to testify, a ruling limiting his testimony to exclude: a) discussion on associated disorders or characteristics Towns did

not have at the time of the alleged offense, and b) testimony from the expert on intent as a surrogate for Towns's testimony; and

3. If the Defendant's expert will be permitted to testify, an order pursuant to Rule 705 of the Federal Rules of Evidence that the Defendant disclose all of the information upon which the expert's opinion is based.

The motion *in limine* filed by Towns requests:

1. A ruling allowing Towns to present expert testimony relating to his mental condition on February 19, 1997; and

2. A ruling allowing Towns to present expert testimony that he did not intend to commit the crimes charged.

The expert Towns intends to call at trial is Dr. Michael William Stott, a clinical psychologist. In support of his motion, Towns included a proffer of Dr. Stott's testimony. The proffer reads as follows:

Dr. Stott will describe his 29 year educational and professional background as a psychologist. Dr. Stott holds a doctorate degree in counseling and educational psychology. During his practice as a psychologist, he has administered thousands of IQ and personality tests. He has written extensively and his articles have appeared in professional publications. He regularly attends seminars and workshops to update his knowledge in his field. He is a member of professional associations associated with the area of psychology. The details of his educational and professional background were provided to the government on June 10, 1997.

Dr. Stott will describe the methods that he used to evaluate Mr Towns, namely, two IQ tests (Wechsler Adult Intelligence Scale—Revised and Wide Range Achievement Test—Revision 3), a personality assessment test (Rorschach Inkblot Technique), a review of his prior psychiatric and alcohol treatment and school records. He will testify that he has consulted a

---

**1.** The government made other requests *in limine* that are unrelated to the issue of expert testimony. All but one of those requests have been resolved. The one outstanding issue, besides the admissibility and scope of expert testimony, re-

lates to the sequestration of witnesses. The issue of whether or not the Defendant's investigator will be excluded from the trial will be resolved at the pretrial status conference scheduled for Thursday, June 11, 1998, at 10:30 a.m.

variety of well recognized authorities which also have been provided to the Government, including the *Diagnostic and Statistical Manual of Mental Disorders IV (DSM–IV)* and the *Physicians' Desk Reference.*

He will also testify about the potential error rate of the tests and the methods used to determine whether one is feigning psychiatric illness or lack of intelligence. He will testify that the methods he used have widespread acceptance in the field of psychology and have been subjected to peer review, thereby insuring accuracy and uniformity in reaching diagnoses. He will testify that the IQ tests that he administered have been subject to revision over several years in an effort to eliminate racial and gender bias and increase reliability. He will testify that an IQ test administered individually, as opposed to a group of individuals, also increases the reliability of a particular test score.

Dr. Stott will give his diagnosis of the defendant, namely: schizoaffective disorder, depressive type, alcohol dependence and borderline intellectual functioning. He will testify that his diagnosis was arrived at by interviewing Mr. Towns, administering the aforementioned tests, his experience and training, review of prior school and psychiatric records and reliance on learned treatises in the field, which authorities have all been provided to the government.

Dr. Stott will explain that there is recognized symptomology in individuals suffering from these conditions. He will explain that schizoaffective disorder, depressive type, is a form of schizophrenia, during which time there is a major depressive episode marked by delusions or hallucinations. This is a major psychiatric illness which is a thought disorder and differs from a personality or mood disorder. Persons suffering from this condition experience delusions and hallucinations. Their senses are distorted, causing a detachment from reality. A common symptom of this condition is difficulty with caring for one's self, poor occupational functioning and restricted range of social contact. Their thought processes are typically disordered and they function marginally in job settings, self care and personal relationships. They have below average cognitive ability and their reality testing and judgment is poor.

Dr. Stott will also testify that Mr. Towns suffers from alcohol dependence and that when he drinks, his psychiatric problems intensify.

The third condition which Dr. Stott will testify about is his borderline intellectual functioning. He will testify that people with this level of functioning typically are impulsive, have faulty judgment and simple, or concrete, thoughts, unable to think through the consequences of their actions, as do most individuals.

Dr. Stott will testify that Gregory Towns suffered from these conditions to such a degree during the time of the alleged attempted bank robbery that he required inpatient psychiatric care. He will testify that Mr. Towns has sought in-patient psychiatric care from both state and county hospitals on several occasions in the past when experiencing the symptoms that he experienced on February 19, 1997 yet continued to suffer from these psychiatric problems. If permitted by the court, he will testify that to actually rob the bank and flee with money would have frustrated his need to be treated for and cured of his mental health problems and therefore did not intend to follow through with a bank robbery.

(Defendant's Amended Motion in Limine at 3–5 [hereinafter Defendant's proffer].) Counsel for the Defendant elaborated on the proffer at oral argument. She stated that the last sentence of the proffer articulates the central purpose of offering Dr. Stott's testimony. Counsel also made it clear that Towns will not be offering the affirmative defense of insanity. Dr. Stott's expert testimony will instead be aimed at casting a reasonable doubt on the government's proof as to the Defendant's *mens rea.*

Besides elaborating on their positions, the parties made some concessions at oral argument. Perhaps recognizing this Court's inclination to adhere to the literal wording of

Federal Rule of Evidence 704(b), which states that "[n]o expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state ... constituting an element of the crime charged," counsel for Defendant Towns agreed that she would not ask Dr. Stott to testify as to the whether or not Towns intended to rob the bank or take the money from the bank[2] on the day of the robbery. Counsel for the government admitted at oral argument that he sees some limited probative value to testimony from Dr. Stott as to the specific psychiatric difficulties from which Towns was suffering on the day of the alleged bank robbery attempt, if only to corroborate Towns's stated motive.[3] Otherwise, the parties disagree over whether or not Dr. Stott should be permitted to testify, and if so, the extent to which he should be able to discuss the Defendant's psychological difficulties as they relate to his intent to commit the crime charged.

### DISCUSSION

Federal Rule of Evidence 702 addresses the admission of expert testimony. It states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) invoked Rule 702 in charging trial judges with the task of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant." 509 U.S. at 597, 113 S.Ct. 2786. This task as expressed in *Daubert* applies where, as here, the expert testimony is "scientific." *Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19, 25 (2d Cir.1994); *see also United States v.*

*Jordan*, 924 F.Supp. 443 (W.D.N.Y.1996) (applying *Daubert* to the expert testimony of a psychologist).

Towns has made it clear in both Dr. Stott's proffer and in the statements of his attorney at oral argument that he will not argue that, as a consequence of his psychological infirmities, he lacked the ability to form the intent to rob the bank. To the contrary, Towns and Dr. Stott both plan to testify that Towns executed a series of connected acts all aimed at what they characterize as his intent to be apprehended and receive medical attention for his mental illness. Both seek to provide testimony that will implicitly concede that Towns was capable of formulating intentions and acting with purpose.

Neither Towns nor Dr. Stott will attempt to show that the Defendant's mental difficulties rendered him unable to appreciate the nature and quality or the wrongfulness of his acts. Such testimony would only be pertinent if Towns planned on presenting the affirmative defense of insanity. *See* 18 U.S.C. § 17(a). He does not. Instead, Towns hopes that Dr. Stott will testify that "to actually rob the bank and flee with the money would have frustrated [the Defendant's] need to be treated for and cured of his mental health problems and therefore [Towns] did not intend to follow through with the bank robbery." (Defendant's proffer.)

■ Expert testimony offered to negate *mens rea* is not inadmissible per se. *United States v. Pohlot*, 827 F.2d at 889, 897 (3d Cir.1987), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988); *see also United States v. Schneider*, 111 F.3d 197, 201 (1st Cir.1997); *United States v. Skodnek*, 896 F.Supp. 60, 62 (D.Mass.1995). An examination of the circumstances surrounding the enactment of 18 U.S.C. § 17 and Federal Rule of Evidence 704(b) suggests that Congress acknowledged that circumstances may arise when expert testimony relative to *mens rea* may be admissible. *Pohlot*, 827 F.2d at 897–99; *Skodnek*, 896 F.Supp. at 63–64.

---

2. The definition of what constitutes "intent" to commit bank robbery is discussed more fully *infra*.

3. Counsel for the government added that the extremely limited probative value of the evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues.

Furthermore, as *Skodnek* notes, Federal Rule of Criminal Procedure 12.2 requires a defendant to give notice prior to trial if the defendant plans to offer expert testimony relating to mental disease or defect or any other mental condition bearing on the issue of his guilt. 896 F.Supp. at 64 (discussing Rule 12.2(b)). The content of Rule 12.2(b) and Federal Rule of Evidence 704(b) shows that their drafters obviously envisioned circumstances in which expert testimony on a defendant's intent would be admissible.

█ While the rules allow for expert testimony relating to *mens rea* under certain circumstances, *Daubert* makes it clear that the proffered expert testimony must have some valid scientific connection to the facts of the case in order to be helpful to the finder of fact, and therefore relevant. *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. If the testimony is valid for one scientific purpose, but not for a purpose related to the fact in dispute, it is not relevant because it will not assist the trier of fact. *Id.* (citing Judge Becker's analysis of "fit" in *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985)). The example given by the Supreme Court is illustrative of the point:

> The study of the phases of the moon ... may provide valid scientific "knowledge" about whether a certain night was dark, and if darkness is a fact in issue, the knowledge will assist the trier of fact. However (absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night.

*Id.* The expert's testimony in the first scenario "fits" the facts of the case, but in the second scenario, it does not "fit." Conducting this analysis of the "fit" between the proffered testimony and the disputed facts of the case is another way of undertaking the relevance inquiry. *See Graham v. Playtex Products*, Inc., 993 F.Supp. 127, 130 (N.D.N.Y.1998).

Defining what constitutes intent to commit bank robbery is an essential first step in analyzing whether or not Dr. Stott's proffered testimony "fits" with the jury's assessment of whether or not Towns had the requisite intent to rob the bank. The parties agree that in order to be convicted of a violation of 18 U.S.C. § 2113(a) as charged in Count I of the Indictment, Towns must have had the intent to "take" money from the bank.[4] *See United States v. Howard*, 506 F.2d 1131, 1133 (2nd Cir.1974). Accordingly, Dr. Stott's proffered testimony is only relevant to the issue of *mens rea* if it will help the jury conclude whether or not Towns intended to take the money from the teller after he passed her the note.

█ In this case, the potential expert testimony as previewed in the final paragraph of the proffer would not assist the trier of fact, since it does not "fit" with the contested issue of *mens rea*. There is no scientific basis to conclude that because Towns suffered from a combination of schizoaffective disorder, alcohol dependence, and borderline intellectual functioning, he lacked the intent to take the money from the bank teller. Put differently, Dr. Stott has no basis to connect the Defendant's psychological impairments with a lack of intent to take the bank's money on February 19, 1997. Dr. Stott is in no position to testify to the opinion that Towns lacked the intent to commit bank robbery. To the contrary, Dr. Stott's proffered testimony is relevant more to the issue of what might have incited and stimulated Towns to form the intent to execute a chain of events that might lead to his apprehension, *see United States v. Tilton*, 34 M.J. 1104, 1107 (A.C.M.R.1992), than to the actual issue of whether or not Towns intended to execute those events. It is just as likely that

---

**4.** The government has spent considerable time arguing that intent to "take," as is alleged when a violation of 18 U.S.C. § 2113(a) is charged, is not the same as intent to "steal or purloin," the intent that accompanies a violation of 18 U.S.C. § 2113(b). *See United States v. Mosley*, 126 F.3d 200, 204 (3rd Cir.1997), *cert. granted*, —— U.S. ——, 118 S.Ct. 1298, 140 L.Ed.2d 465 (1998).

While the distinction between the definition of intent to "take" versus the definition of intent to "steal or purloin" may become essential at trial in crafting instructions for the jury on the element of intent, for the purposes of deciding the admissibility or scope of expert testimony on *mens rea*, it is not essential for this Court to resolve the differences in the definitions, if any.

the Defendant's desire to "fake" the bank robbery might have included taking the money, had he not been apprehended before the bank teller could hand it over. Attempting to "fit" Dr. Stott's testimony about the Defendant's psychological difficulties with the issue of Towns's intent is akin to trying to connect proof of a full moon with the execution of an irrational act.

However, some limited testimony from Dr. Stott on the Defendant's specific psychological abnormalities on the date of the alleged bank robbery attempt is a proper "fit" with the issue of the Defendant's motive. Motive, as that factor that "incites and stimulates the formation of intention," *see Tilton*, 34 M.J. at 1107, is certainly at issue in this case. Towns, an admittedly inarticulate witness, plans to testify that, in effect, his feelings of depression led him to fake a bank robbery to get medical attention. If the jury concludes that Towns was moved to approach the teller, brandish a butter knife, and pass a threatening note because he wanted treatment for his mental maladies, and that his desire to fake a bank robbery to secure treatment did not extend so far as to include taking the money from the teller, then Towns will have succeeded in negating the proof of *mens rea*. If, however, the government succeeds in convincing the jury that, whether faking the robbery or not, Towns was in the process of executing a series of volitional acts that would have included taking money from the teller had she produced it before Towns was apprehended, then the government will have met its burden of proving the Defendant's intent to take money from the bank.

Of course, neither Dr. Stott nor any clinical psychologist can answer that factual question directly, since none are capable of offering scientific evidence as to what was in the Defendant's head on the day of the alleged attempted robbery. But Dr. Stott can present the jury with a clear statement of the mental abnormalities from which Towns was suffering. Such testimony will assist the jury in resolving the issue of the Defendant's motive, since when Towns testifies that he entered the bank to fake the robbery and secure treatment, his motive will immediately become an issue that is in many ways intwined with his own statements as to his lack of intent to rob the bank. Testimony from an expert on the specifics of the Defendant's psychological impairments will become relevant insofar as it will corroborate the Defendant's statements that he was in need of medical attention. Offered in this context, limited testimony from Dr. Stott on the Defendant's psychological infirmities "fits," in the same way that expert testimony on the phases of the moon fits with the issue of whether or not a certain night was dark.

In addition, the danger of undue prejudice or confusion from limited testimony from Dr. Stott is slight when compared to the probative value of Dr. Stott's testimony on the Defendant's abnormalities. Towns is, by all accounts, an inarticulate witness who is incapable of accurately describing his own mental difficulties. Because of his borderline intellectual functioning, he is unable to label his abnormalities beyond characterizing himself as feeling "depressed." Without proof from Dr. Stott, the jury will be left to wonder why Towns would have had any motive to seek psychological assistance to remedy such a commonplace condition. While Rule 403 concerns buttress this Court's conclusion that Dr. Stott should not be permitted to offer any testimony on the Defendant's state of mind or intent to commit bank robbery, those same concerns do not militate against admitting Dr. Stott's testimony as corroborative of the Defendant's professed motive.

Accordingly, this Court will grant the government's motion in part and deny it in part. Dr. Stott will be permitted to testify as to the Defendant's mental abnormalities on February 19, 1997, the day of the alleged attempted bank robbery. He will be permitted to describe those abnormalities to the extent necessary to define them for the jury. The elicited testimony must relate to the Defendant's motive, and not to his intent on the day of the alleged attempted robbery. In other words, it must be limited to that which will explain what mental difficulties affected Towns, and cannot include any explanation of how those abnormalities may have impacted on the Defendant's decisions and actions. Testimony from Dr. Stott on how the Defendant's condition affects thought processes

and actions will only be admitted if connected to the Defendant's professed motive.[5] In that regard, Dr. Stott will not be permitted to opine as to how persons affected by abnormalities like those which affect Towns make decisions or formulate their actions, unless such testimony relates to a desire to seek treatment. Nor will Dr. Stott be allowed to tell the jury how actually taking money from the teller might have frustrated the Defendant's need to be treated for and cured of his mental infirmities.[6]

Should the parties have difficulty at trial in deciding what is or is not admissible as a consequence of this Decision and Order, they are encouraged to seek a ruling from this Court on questionable areas of examination at a time prior to the actual examination, outside the presence of the jury.

Because this Court has limited the extent to which the Defendant's expert will testify, there is no need for the Defendant to make any additional disclosures to the government. The disclosures that have been made up to this point by the Defendant are more than adequate. Accordingly, the government's motion for additional disclosure pursuant to Federal Rule of Evidence 705 will be denied.

### CONCLUSION

The government's motion in limine will be granted in part and denied in part. The Defendant's expert, Dr. Stott, will be permitted to testify to the Defendant's psychological impairments to corroborate the Defendant's stated motive for faking an attempted robbery of the bank. The government's request for additional pretrial disclosures relating to Dr. Stott will be denied.

The Defendant's motion in limine will be granted in part and denied in part. Dr. Stott will be permitted to testify as to the Defendant's mental condition on February 19, 1997, but that testimony will not include any opinion as to the Defendant's intent to commit the crime charged.

### ORDERS

IT HEREBY IS ORDERED, that the government's motion in limine is GRANTED in part and DENIED in part.

FURTHER, that the Defendant's motion in limine is GRANTED in part and DE-NIED in part.

SO ORDERED.

---

**5.** Without having the benefit of knowing what testimony the Defendant might attempt to elicit from Dr. Stott as a consequence of this Decision and Order, it is difficult for this Court to envision how Dr. Stott might present admissible evidence of how the Defendant's mental condition impacted his thoughts and actions. It would appear that any proffered evidence relating to the connection between Defendant's thought processes and actions, on the one hand, and the Defendant's motive, on the other, would necessarily involve unreliable and therefore inadmissible opinion testimony. *See Daubert*, 509 U.S. at 592, 113 S.Ct. 2786. For example, if Dr. Stott were prepared to testify that persons who suffer from the Defendant's condition tend to seek medical care for their abnormalities by faking bank robberies, such proof would be inadmissible as unreliable.

But short of an answer to that question, it is hard to imagine relevant (and not unduly prejudicial) testimony from Dr. Stott on how the Defendant's psychological problems had any impact on his thoughts or actions.

**6.** In other words, Dr. Stott will not be permitted to testify as proffered in the last sentence of his written proffer. Such proof, in addition to failing the *Daubert* relevancy analysis for want of a proper "fit" to the issue of intent, is also highly prejudicial, with substantial danger of misleading the jury or confusing the issues. *See* Fed. R.Evid. 403.